BOB COMPTON V. THE STATE.

No. 23066. Delivered March 14, 1945.

The opinion states the case.

*D. J. Brookreson,* of Benjamin, *John Davenport,* of Wichita Falls, and *James A. Stephens,* of Benjamin, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is theft of one cattle. The punishment assessed is confinement in the state penitentiary for a term of four years.

This case is one of circumstantial evidence. Appellant questions the sufficiency thereof to sustain his conviction. The rec-

ord reflects that L. B. Smith was the manager of the ranch belonging to Furd Halsell and son and was in charge of all the cattle and live stock thereon; that appellant was in possession of the Kilworth Ranch under and by virtue of a lease; that the latter ranch joined the former on the west. On the 5th day of July, 1944, while Smith was riding over the ranch looking after the cattle he noticed some horse tracks which had some peculiarities about them. One of the tracks disclosed that the horse which made it had a piece broken out of its left forefoot and the other track showed that the horse which made it had a piece broken out of the middle of its left forefoot. Smith also noticed some tracks which had been made by a cow and calf. He followed these tracks and found where a calf had gone through a barbed-wire fence into the appellant's pasture. Smith then entered that pasture and found two of Halsell's cows therein. Thereupon he went to Crowell and informed the sheriff of what he had found. The sheriff called the Rangers at Lubbock, who went immediately to the Halsell ranch, where they spent the night. Early the next morning, accompanied by Smith, they entered the appellant's pasture and found twenty-two dead cows with their ears cut off. The brand on the body of each cow had been cut out. However, there were two or three cows from which the brand had not been eliminated and they bore Halsell's brand. They also found one cow which Smith identified as belonging to Halsell by reason of a slipped off horn. It further appears from the record that on the afternoon of July 4th appellant loaded some unbranded calves in a truck and carried them to Fort Worth, where he sold them. The dead cows showed that they had been nursing calves and these calves were missing. The cow with the slipped horn was identified by Smith as belonging to Halsell. There was evidence that the dead cows had been knocked in the head with what appeared to have been a hammer or some such instrument. The calves which appellant carried to Fort Worth and sold were nineteen in number but were not identified as belonging to Halsell except by circumstances that the cows that were dead in appellant's pasture appeared to have had sucking calves which were not found either in the appellant's pasture or in that of Halsell or elsewhere.

On the 6th or 7th of July, the Rangers and the sheriff of Knox County, as well as the sheriffs of the adjoining counties, searched a well on the appellant's ranch near his home and discovered therein the head of a calf from which the ears had been cut. They also found intestines of an animal therein. In searching the barn and saddle shop they found a hammer which they carried out into the pasture and fitted it into the holes in the head of the dead cows and it fit perfectly. They also examined

the appellant's horses and discovered that one bay horse had a piece broken out of the left side of his forefoot and a dun horse which had a piece broken out of the middle of his forefoot. The officers made plaster of Paris casts of the tracks found in the pasture showing the peculiarities of the horses' hoofs, and these were introduced in evidence.

The foregoing brief statement of the salient facts proven on the trial which, in the absence of any explanation of how the dead cows with the brands cut out and otherwise mutilated bodies came to be in appellant's pasture, is, in our opinion, sufficient to sustain the jury's conclusion of his guilt.

Appellant complains of the testimony given by various State's witnesses relative to the finding of dead cows in his pasture other than the one charged to have been stolen; that all of the cows appeared to have been killed by being struck in the head with a hammer or an instrument of like character. He objected to this testimony on the ground that it showed an extraneous offense. The objection was overruled on the theory that it showed system, intent and motive. The dead cows found in the appellant's pasture, according to the facts in this case, were all taken about the same time, from the same owner and from the same ranch with the exception of four or five of them. We think this evidence was admissible as tending to prove identity in developing the res gestae and in making out the guilt of the defendant by a chain of circumstances connected with the offense for which he was on trial. Iu support of the conclusion here expressed, we refer to the following cases: Satterwhite v. State, 6 Tex. Cr. App. 609; Thompson v. State, 42 Tex. Cr. R. 140; Watters v. State, 94 S. W. 1038; Bonners v. State, 35 S. W. 650; Jones v. State, 14 Tex. Cr. App. 85; Mueller v. State, 85 Tex. Cr. R. 346.

Appellant contends, however, that the cases of Mueller v. State, supra, and Garcia v. State, 299 S. W. 909, are not applicable here, because in those cases the accused made an explanation of his possession of the property in question, while in the instant case, no explanation was made or offered. It will be noted that in the present case the State relied entirely upon circumstantial evidence to establish its cases against the appellant. Therefore, every fact which may .throw any light on any issue in the case, or which may form a link in the chain of circumstances which tends to connect the accused with the offense charged would be admissible. In Branch's Ann. Tex. C. C. P., p. 1285, section 2347, the rule is stated as follows:

"Proof of other offenses is admissible if such proof is a part

of the res gestae of the alleged offense for which defendant is being tried, or if it tends to show intent when intent is an issue, or serves to prove identity when identity is an issue or when it is sought to show the guilt of defendant by circumstantial evidence and such proof of another offense connects or tends to connect the defendant with the alleged offense for which he is being tried, or when it tends to defeat the defensive theory."

If the rule above announced is correct, and we think it is, then, in our opinion, the evidence complained of was admissible. In support of his contention appellant cites us to the cases of Black v. State, 13 S. W. (2d) 100, and McElreath v. State, 54 S. W. (2d) 119. We have examined these cases but fail to see wherein he may derive any comfort from the Black case, supra, which was affirmed. The McElreath case is easily distinguishable from the one under consideration on the facts. We think the case of Williams v. State, 105 Tex. Cr. R. 22, sustains our conclusion. We therefore overrule his contention.

Appellant next complains of the testimony given by the officers as to what they found in the appellant's well, barn and saddle house as a result of a search thereof. He objected thereto on the ground that the search was made without a search warwant. The State admitted that the officers made the search without a warrant but contended that they had the consent of the appellant to do so. Consequently, the burden of proving consent to the search rested upon the State, and it sought to discharge such burden by calling Raymond Waters, a Texas Ranger, as a witness. He testified that on the morning of July 6, 1944, he went to the appellant's home and told him that he and others desired to "ride his pasture" and look at his cattle; that appellant told him to "go ahead" and look. The witness then requested appellant to go with him into the pasture which he did; that at noon or soon thereafter they returned to the appellant's home when appellant informed the witness that he wanted to go to Seymour for some carpenters for his mother. Standing alone, this would not, in our opinion, be sufficient to show consent to a search of appellant's well, barn and saddle house. However, on re-direct examination the witness stated that he told appellant that he "would like to look his place over" to which appellant replied, "Go ahead." Although this is the only witness who testified to appellant's consent to search, not only his pasture but his premises as well, still there is not any evidence from any source, either direct or circumstantial, which controverts the same, nor is the language imputed to the appellant ambiguous. Under the circumstances here disclosed, we would not be justified in holding that the appellant's consent did

not include the search of his barn, well and saddle house. If the testimony of this witness had been controverted, or the language imputed to appellant has been ambiguous, the court would have been required to submit the issue to the jury under an appropriate instruction to disregard all the evidence discovered as a result of the search unless they believed from the evidence, beyond a reasonable doubt, that appellant consented thereto. In support of the opinion here expressed we refer to the following authorities: Frazier v. State, 119 Tex. Cr. R. 217; Gonzales v. State, 113 Tex. Cr. R. 122.

Appellant also contends that the claimed consent was not voluntary and therefore the evidence found as a result of the search was inadmissible. We find nothing in the record to sustain his contention except the fact that he knew Raymond Waters and also knew that Waters was an officer, but this alone does not make the consent involuntary. We see no need for any further discussion of the question.

Bill of Exception No. 10 shows that appellant wanted to prove by Charlie Arp that about a year before the trial of this case Slim Davis, an employee of the Waggoner Estate, told him that if he (Arp) would camp on appellant's place and catch him violating the law or "frame him to violate the law" and catch him stealing cattle he (Arp) would always have a job with the Waggoner Estate. The State objected to this evidence on the ground that it was irrelevant and did not shed any light upon any issue in this case. The court sustained the objection and appellant excepted. Appellant contends that this evidence was admissible for the purpose of showing a conspiracy on the part of the Waggoner Estate and others to run him off his ranch. We are not in accord with his contention for the following reasons: (a) Because there is not any evidence that Davis was authorized by the legal representatives of the Waggoner Estate to employ anyone; (b) there is not any evidence from any source that Davis was authorized by the Waggoner Estate to make such a statement or agreement with Arp or anyone else; and (c) there is not any evidence from any source which even, in the remotest degree, shows a conspiracy on the part of the Waggoner Estate and others to run appellant from his ranch. Neither is there any evidence from any source that the Waggoner Estate had anything to do with the dead cows being on appellant's premises. Hence the excluded evidence was not germane to any issue in the case. Moreover, it was hearsay. About the only thing it tended to prove, as we view it, is that someone had a suspicion that appellant was a thief.

210

Finding no error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.