William Blair MYERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–82–0230–CR.

Court of Appeals of Texas,
Amarillo.

Jan. 17, 1984.

Douglas R. Woodburn, Amarillo, for appellant.

Danny E. Hill, Dist. Atty., Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

REYNOLDS, Chief Justice.

Following his plea of guilty to the court, appellant William Blair Myers was convicted of possession of a controlled substance, *viz.*, heroin, in a quantity less than 28 grams. Punishment was assessed at three (3) years confinement in the Texas Department of Corrections.

Appealing, appellant contends, with his sole ground of error, that the trial court erred in overruling his motion to suppress evidence obtained by an unlawful search and seizure. Concluding that the search, albeit following an illegal arrest, was lawfully conducted pursuant to appellant's voluntary consent freely given, we affirm.

The evidence adduced at the suppression hearing reveals that on 29 October 1981, a man identifying himself as Jerry Rhodes deposited with Ashby Simpson, the "terminal agent" for Air Cargo, Inc. at Dulles Airport in Washington, D.C., a package consigned to William or Bill Myers in Amarillo. Asked by Simpson to identify the contents of the package, Rhodes represented that the contents were motorcycle parts, but he would not specify the parts. Rhodes signed the "airway bill" which, in addition to reciting the shipment and corresponding charge for it, reserved to the shipper the right to examine the contents of any packages entrusted to it.

Simpson had the duty to assure that the contents of packages are safe for air travel and his suspicion was aroused by the size of the package and Rhodes' lack of specification of its contents. Following Rhodes' departure, Simpson opened the package for inspection. Observing that the package contained what appeared to be a prescription medicine bottle and one or more syringes, he relayed his discovery to Federal Aviation Administration police.

An hour later, United States Customs agent Low telephoned Simpson, who ventured that the package contained "narcotics." Low was unsuccessful in enlisting the investigatory support of the Drug Enforcement Administration, and he instructed Simpson to re-seal the package and complete the shipping transaction. Accordingly, the package was placed on an October 30 morning flight to Dallas for transshipment to Amarillo.

On the same day, Low telephoned Lieutenant Garner of the Amarillo police department to alert the authorities of the impending arrival of suspected narcotics. Garner ascertained the arrival time of the flight and established surveillance at the Amarillo International Airport. Shortly before 4:00 p.m. on October 30, appellant, identifying himself as the recipient, redeemed the package at the Braniff Airways freight counter. Garner and two other officers arrested him and seized the package.

After giving appellant his *Miranda (Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) rights, which he acknowledged in writing, the officers asked appellant for his consent to search the package. The officers informed appellant that they suspected narcotics were in the package, but that they lacked a search warrant and, without his consent, they would need or attempt to get a search warrant. Appellant expressed a desire to consult an attorney before deciding whether to consent to the search. The officers took appellant, his awaiting female companion, and the package to the police station, where appellant was given a local telephone book and permitted to telephone any attorney of his choosing.

Appellant contacted an attorney, who arrived shortly thereafter at the police station. Appellant and the attorney were afforded a private conversation, following which the attorney informed Garner that appellant would sign a written consent to search the package, waiving any necessity for a warrant. Although the record does not disclose whether appellant's consent was in conformity with or contrary to the advice of counsel, the attorney informed appellant, within Garner's hearing, that appellant need not voluntarily consent to the search, but instead could require the officers to obtain a warrant.

Appellant executed the consent to search in the presence of the attorney he consulted, after Garner again told him that he did not have to consent to the search. Appellant gave his consent about an hour to one and one-half hours after his arrest. Inside the package the police discovered, *inter alia*, three packets of a substance later determined to constitute .841 grams of heroin.

Appellant neither testified nor offered other evidence at the suppression hearing. Without expressing the rationale therefor, the court overruled the motion to suppress, following which appellant entered a plea of guilty to the offense charged in the indictment. Incident thereto, appellant informed the court that he was age 34, was a high

school graduate, and had completed one semester of college.

■ Appellant contends that the warrantless search did not come within one of the recognized exceptions for a search conducted without a warrant issued upon probable cause. In advancing the contention, appellant does not directly challenge, nor does the State directly defend, his arrest; yet, it is to be accepted that appellant's airport arrest was illegal. At the time of appellant's apprehension, Garner was possessed of no more than a suspicion, based only upon Simpson's unverified suspicion, that the package contained narcotics. Patently, the officer's suspicion, not being an articulable one, was insufficient to constitute probable cause to arrest appellant at the airport. *See Reid v. Georgia,* 448 U.S. 438, 440–41, 100 S.Ct. 2752, 2753–54, 65 L.Ed.2d 890 (1980); *Fatemi v. State,* 558 S.W.2d 463, 466 (Tex.Cr.App.1977).

■ Notwithstanding an illegal arrest, one of the recognized exceptions to the requirement of both a warrant and probable cause for a valid search is a search authorized by consent freely and voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *Kolb v. State,* 532 S.W.2d 87, 89 (Tex.Cr.App.1976). Whether a consent to search was voluntary is a question of fact to be determined from the totality of all the circumstances. *Schneckloth v. Bustamonte, supra,* at 227, 2047; *Kolb v. State, supra,* at 90. If the consent is determined to be voluntary, then it must be determined whether the consent was "sufficiently an act of free will to purge the primary taint [of the illegal arrest]." *Brown v. Illinois,* 422 U.S. 590, 601–02, 95 S.Ct. 2254, 2260–61, 45 L.Ed.2d 416 (1975) (quoting *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963)).

■ The circumstances in this cause are that appellant was a mature man with formal education; he acknowledged in writing his *Miranda* rights and his right not to consent to a search of the package; other than his initial illegal arrest, he was not subjected to official overreaching and was afforded ample time to deliberate; and he consented to the search after consultation with the attorney of his choice. Appellant contends, however, that there was implied coercion by Garner's statement that absent his consent, the police would need or attempt to obtain a search warrant; but, Garner's statement, without more, does not invalidate the consent given, *Stephenson v. State,* 494 S.W.2d 900, 904 (Tex.Cr.App. 1973), and appellant does not suggest there is, nor do we detect, other evidence of official coercion or duress.

The officers did not make any misrepresentations to induce appellant's consent; indeed, the officers observed his rights and honored his request to consult privately with an attorney. In this regard, appellant "would assert that, under the circumstances, the appearance of the attorney more adequately demonstrates Appellant's total submission to the claim of authority by police and acquiesence (*sic*) in the implied threat of the ability to examine the contents by search warrant." But the bare assertion, undeveloped with the circumstances and unsupported by any authority, is contradicted by the recorded advice appellant received from the attorney. Beyond that, appellant's actual consultation with his chosen attorney negates his present assertion of his total submission to the claim of authority by police and, it has been indicated, sufficiently attenuated the taint of his illegal arrest. *See Brown v. Illinois, supra,* 422 U.S. at 611, 95 S.Ct. at 2265 (Powell, J., concurring in part).

■ We have not been cited, nor have we found, any Texas authority addressing the precise issue presented in this cause. Absent a controlling determination of the issue in this jurisdiction, we conclude that the totality of all the circumstances in the record, measured by the applicable principles articulated in the previously cited authorities, competently supports a finding that appellant's consent to search was voluntary and was an act of free will sufficient to purge the taint of his illegal arrest.

The same conclusion was reached upon a more detailed analysis of, and the application of the same basic principles to, a similar factual situation in *United States v. Wellins*, 654 F.2d 550 (9th Cir.1981). Deeming that the accused's consent to search was, in the light of all the circumstances, voluntarily given and was sufficiently an act of free will to attenuate the taint of his illegal arrest, the *Wellins* court found the crucial factor to be that the accused was permitted to consult with his attorney. *Id.* at 555. We regard the court's analysis as sound and apposite to the cause before us.

We, therefore, cannot fault the trial court for overruling appellant's motion to suppress. His ground of error is overruled.

The judgment is affirmed.