Raul J. JUAREZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 723-85.

Court of Criminal Appeals of Texas, En Banc.

Sept. 27, 1988.

Gary Hill, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Robert Dinsmoor, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION
FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

This appeal was taken from a conviction for possession of marihuana over four ounces. The jury assessed appellant's punishment at seven years' imprisonment and recommended probation. The imposition of the sentence was suspended and the appellant was placed on probation for seven years. Notice of appeal was given.

The El Paso Court of Appeals affirmed the conviction in an unpublished opinion, holding, inter alia, that appellant's voluntary consent to search his vehicle authorized the warrantless search regardless of any impropriety in the initial stop. *Juarez v. State* (Tex.App.—El Paso, No. 08–84–00277–CR). In his sole ground of review appellant in his petition for discretionary review contended the Court of Appeals "erred in holding that the consent was not tainted by the illegal arrest." We granted said petition to determine the correctness of the holding of the Court of Appeals.

The appellant and a male companion were stopped in El Paso on February 19, 1981, while traveling in an automobile which had been rented in appellant's name the preceding night, giving a Chicago address.

Captain Ramon Ramirez of the El Paso Police Department testified that at 5:30 or 6 a.m. on February 19, 1981, he had received information about two suspects, a marihuana transaction and the automobile in question from a confidential informer; that about 7:30 a.m. he assigned Officer Ted Whorton to the "case." About two hours later Whorton reported by telephone or radio that the surveillance "had produced exactly the information that the confidential informer had stated."

Detective Karl Beasley testified about 12:15 p.m. on February 19th he had been called by Detective Whorton to assist him with a surveillance, and that he had joined Whorton on the fifth floor parking area of the downtown Holiday Inn. They began a surveillance of a white Oldsmobile,

Texas license VLR 946, parked there. Beasley explained that Whorton, a veteran police officer, who to Beasley's knowledge had made many arrests for marihuana possession, walked over to check out the white Oldsmobile, that Whorton walked around the vehicle to see if he could detect any odor of marihuana. When, at the suppression hearing, Beasley was asked if Whorton had informed him whether or not he had smelled marihuana, Beasley answered in the affirmative. The record then reflects:

"MR. HILL (defense counsel): I object to anything Detective Whorton told this officer, Your Honor.

"THE COURT: Well, I'll sustain the objection.

"MR. DINSMOOR (prosecutor): Your Honor, we're not entering it for the truth of the matter, sir. All we're entering is for the probable cause in this police officer's mind; in other words, for a present sense impression, not as to whether it was true or not, but just as to whether this officer would then have probable cause to stop the Defendants.

"THE COURT: Well, I'm going to overrule the—I'll sustain the objection and I'll not allow the officer to tell what Detective Whorton told him. Now, he said what he saw the detective do, which I think is admissible, but I don't think it's admissible as to what the detective told him." [1]

Beasley related that neither he nor Whorton had an arrest or search warrant, but when they called for someone to maintain the surveillance while they secured one, Captain Ramirez had informed them no one was available at the time. Beasley and Whorton were afraid the Oldsmobile would be moved if they left the hotel to secure a warrant. Shortly thereafter two men got into the Oldsmobile and left the parking area, drove down Oregon Street to Paisano and east on Paisano to Montana and east on Montana. Beasley and Whorton radioed for assistance. Within about a mile from the city limits on Montana which leads to the highway to Carlsbad, New Mexico, the Oldsmobile was stopped. Captain Ramirez, Detective Navarez, Whorton, Beasley and a customs officer or officers were present at the time.

Ramirez testified that the appellant was driving the car, that he explained to the appellant and his passenger the reason for the stop, and that he read them their *Miranda* rights.[2] Ramirez then asked appellant if he would consent to a search of the vehicle. Appellant asked to conver with his companion, and Ramirez permitted him to do so as he (Ramirez) "wanted to make absolutely sure he knew what he was doing." After the conference, appellant stated, "Okay. I'll sign it." A written form of consent was executed. A search of the trunk revealed substance which was identified by the chemist as being marihuana and weighing one hundred and fourteen and a half pounds.

There was no showing that guns were drawn or that threats or coercion were used by the officers in obtaining the consent to search. The issue of consent was uncontested. Appellant offered no evidence on this issue, maintaining simply that even if there was consent, evidence discovered in the subsequent search was tainted by the allegedly illegal stop, and therefore must be suppressed.

The State was hampered in its efforts in demonstrating probable cause due to the absence of Detective Whorton. Over three years and four months elapsed from the date of the offense until the trial. Whorton was shown to have retired from the police force, apparently "not on good terms," and all efforts to locate him and secure his presence as a witness were unsuccessful. Nevertheless, the State relies

---

1. Hearsay is admissible on the issue of probable cause to arrest or search or to show consent to search. *Murphy v. State,* 640 S.W.2d 297, 299 (Tex.Cr.App.1982); *Adams v. State,* 552 S.W.2d 812 (Tex.Cr.App.1977); *Hutchinson v. State,* 509 S.W.2d 598 (Tex.Cr.App.1974); *Pilcher v. State,* 503 S.W.2d 547 (Tex.Cr.App.1974). See also *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

upon the voluntary consent to justify the search.

In *Kolb v. State*, 532 S.W.2d 87, 89, 90 (Tex.Cr.App.1976), it was written:

"The basic purpose of the Fourth Amendment, United States Constitution, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. See *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *Haynes v. State*, 475 S.W.2d 739 (Tex.Cr.App.1971); *Brown v. State*, 481 S.W.2d 106 (Tex.Cr. App.1972). The same is true of Article I, Sec. 9 of the Texas Constitution, and it is well settled under the Fourth and Fourteenth Amendments of the United States Constitution that a search conducted without a warrant issued upon probable cause is *'per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions.' *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Coolidge v. New Hampshire*, 403 U.S. 443, 454, 455, 91 S.Ct. 2022, 2031–2032, 29 L.Ed.2d 564 (1971); *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed. 2d 419 (1970). See also *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Stoddard v. State*, 475 S.W.2d 744, 749 (Tex.Cr.App. 1972).

"One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. *Schneckloth v. Bustamonte*, supra; *Davis v. United States*, 328 U.S. 582, 593–594, 66 S.Ct. 1256, 1261–1262, 90 L.Ed. 1453 (1946); *Zap v. United States*, 328 U.S. 624, 630, 66 S.Ct. 1277, 1280, 90 L.Ed. 1477 (1946). The protections afforded by the Fourth Amendment and the State Constitution (Article I, Sec. 9) may be waived by an individual consenting to a search. *Paprskar v. State*, 484 S.W.2d 731, 737 (Tex.Cr.App.1972); *Allen v. State*, 487 S.W.2d 120 (Tex.Cr.App. 1972); *DeVoyle v. State*, 471 S.W.2d 77 (Tex.Cr.App.1971).

"It is also settled that the burden of proof by clear and convincing evidence is upon the prosecution to show that the consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968); *Frazier v. State*, 119 Tex.Cr. R. 217, 43 S.W.2d 597 (1931); *Scott v. State*, 139 Tex.Cr.R. 210, 139 S.W.2d 787 (1940); *Compton v. State*, 148 Tex.Cr.R. 204, 186 S.W.2d 74 (1945); *Paprskar v. State*, 484 S.W.2d 731, 737 (Tex.Cr.App. 1972). The burden requires the prosecution to show consent given was positive and unequivocal, and there must not be duress or coercion, actual or implied. *Allen v. State*, 487 S.W.2d 120 (Tex.Cr.App. 1972). This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. *Bumper v. North Carolina*, supra; *Amos v. United States*, 255 U.S. 313, 317, 41 S.Ct. 266, 267, 65 L.Ed. 654 (1921); *Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 368, 92 L.Ed. 436 (1948); *Paprskar v. State*, supra.

"As stated in 51 Tex.Jur.2d, Rev., Part I, Searches and Seizures, Sec. 42, p. 722;

"'Consent to a search is not to be lightly inferred. It should be shown by clear and convincing evidence, and any consent must be voluntary and neither physically nor psychologically coerced....'

"And it must be remembered that consent to search is invalid if granted only in submission to a claim of lawful authority. *Amos v. United States*, supra.

"The question of whether a consent to search was 'voluntary' is a question of fact to be determined from the totality of all the circumstances. *Schneckloth v. Bustamonte*, supra; *Paprskar v. State*, supra." (Footnotes omitted.)

See also *Meeks v. State*, 692 S.W.2d 504, 508–510 (Tex.Cr.App.1985).

 The fact that a person is under arrest does not, in and of itself, prevent a free and voluntary consent from being given. *Meeks v. State*, supra, at p. 509, and authorities there cited. *Paulus v. State*, 633 S.W.2d 827, 851 (Tex.Cr.App.1982). Custody is merely one of the factors to be considered. *Nastu v. State*, 589 S.W.2d

434 (Tex.Cr.App.1979), cert. den. 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862.

■ Notwithstanding an illegal arrest, consent to search, freely and voluntarily given, is still one of the recognized exceptions to the requirement of both a warrant and probable cause for a valid search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *Kolb v. State*, supra, at 89; *Myers v. State*, 680 S.W.2d 825, 827 (Tex.App.— Amarillo, 1984).

In LaFave, Search and Seizure (A Treatise on the Fourth Amendment), 2nd Ed., Vol. 3, § 8.2(d), pp. 189–190 (1987), it is stated:

"(d) Prior illegal police action. When called upon to determine the admissibility of physical evidence obtained by a purported same form of illegal police action, the courts do not consistently follow the same approach in characterizing the issue. Sometimes the question is stated in terms of the previously discussed 'totality of the circumstances' voluntariness test, in which case the court undertakes to ascertain whether the prior illegality and the other circumstances resulted in coercion of the person who purportedly consented to the search. On other occasions, however, the question is said to be whether the consent was a fruit of the prior illegality. In the latter instances, the courts are making use of the so-called 'fruit of the poisonous tree' doctrine, whereby *Wong Sun v. United States* [371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)] instructs, it must be determined 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' While there is a sufficient overlap of the voluntariness and fruits tests that often a proper result may be reached by using either one independently, it is extremely important to understand that (i) the two tests are not identical, and (ii) consequently the evidence obtained by the purported consent should be held admissible only if it is determined that the consent was *both* voluntary and not an exploitation of the prior illegality. * * * But, it is thus true that a consent to search which fails the voluntariness test because of a prior illegality may just as convincingly be said to be a fruit of the prior illegality, the fruit of the poisonous tree doctrine also extends to invalidate consents which are voluntary...." (Emphasis in original.)

In *People v. Odom*, 83 Ill.App.3d 1022, 39 Ill.Dec. 406, 411, 404 N.E.2d 997, 1002 (Appellate Court of Ill., 3rd Dist.1980), it was stated:

"However, a finding that the defendant's consent to search was voluntarily given is but one step in the determination of the propriety of the search, because even if the consent were voluntary it still may have been obtained by the exploitation of an illegal arrest."

See also *United States v. Taheri*, 648 F.2d 598 (9th Cir.1981); *State v. Cates*, 202 Conn. 615, 522 A.2d 788 (1987) (not withstanding voluntariness of consent separate inquiry into exploitation necessary).

■ In Texas, at least since *Schneckloth v. Bustamonte*, supra (1973), and *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), the "totality of the circumstances" voluntariness test has been generally employed. See, e.g., *Meeks v. State*, 692 S.W.2d 504 (Tex.Cr.App.1985); *Kolb v. State*, supra; *Resendez v. State*, 523 S.W.2d 700 (Tex.Cr.App.1975); *Potts v. State*, 500 S.W.2d 523 (Tex.Cr.App.1973). On occasion this Court has considered that the question is whether the consent was a fruit of the prior illegality utilizing *Wong Sun v. United States*, supra, along with the above described voluntariness test. *Armstrong v. State*, 550 S.W.2d 25 (Tex. Cr.App.1977) (opinion on rehearing); *Dickey v. State*, 716 S.W.2d 499 (Tex.Cr.App. 1986); *Miller v. State*, 736 S.W.2d 643 (Tex.Cr.App.1987).

In *Meeks v. State*, 692 S.W.2d 504, 510 (Tex.Cr.App.1985), the Court held the roadblock stop was illegal but then turned to the question of the validity of the consent to search. The Court concluded, "We hold

from a totality of the circumstances that appellant Meeks did not voluntarily consent to the search, and that the trial court erred in overruling her motion to suppress." While the Court seemed to follow the "totality of circumstances" voluntariness test, the Court did factor in the illegality of the stop. The same result would have been reached under either test.

In *Armstrong v. State*, 550 S.W.2d 25, 31, 32 (Tex.Cr.App.1977) (opinion on rehearing), it was written:

"We hold that under the circumstances the detention here does not satisfy the above test. The detention here was just the sort of fishing expedition the Fourth Amendment and Article I, Sec. 9 of the State Constitution, were designed to prohibit.

"The State argues that even if the stop was illegal the appellant consented to the search of his car trunk and therefore the trial court did not err in overruling the motion to suppress evidence of the items found therein. The State urges that the consent to search, voluntarily made, dissipated the taint of the detention and made the fruits of the search admissible. See *Potts v. State*, 500 S.W.2d 523 (Tex. Cr.App.1973).

"The 'fruit of the poisonous tree' doctrine explained at length in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), serves to exclude as evidence not only the direct products but also indirect products of Fourth Amendment violations. Evidence is not classified as a fruit requiring exclusion, however, merely because it would not have been discovered 'but for' the primary invasion.

\* \* \* \* \* \*

"By consenting to a search, an individual may waive his constitutional right and dispense with the question of the legality of an arrest or detention. Cf. *Potts v. State*, supra.

"And it has been said that consent by the defendant, if sufficiently an act of free will to purge the primary taint of the unlawful arrest or detention (*Wong Sun v. United States*, supra, 371 U.S. at

486, 83 S.Ct. at 410) may produce the requisite degree of 'attenuation.' See *State v. Fortier*, 113 Ariz. 332, 553 P.2d 1206 (1976); *People v. Sesslin*, 68 Cal.2d 418 at 428, 67 Cal.Rptr. 409 at 416, 439 P.2d 321 at 378 (1968), cert. den. 393 U.S. 1080, 89 S.Ct. 850, 21 L.Ed.2d 772."

After discussing the "totality of circumstances" voluntariness test and the facts of the case the court concluded:

"While this is true when the fact of the illegal detention is considered in the light of all other circumstances we conclude the evidence was seized through exploitation of the illegal rather than 'by means sufficiently distinguishable to be purged of the primary taint.' *Wong Sun v. United States*, supra. The State did not sustain its burden."

In *Luera v. State*, 561 S.W.2d 497 (Tex. Cr.App.1978), this Court stated in part:

"The detention, if unlawful, may have also tainted appellant's apparent voluntary consent to search the trunk. See *Armstrong v. State*, 550 S.W.2d 25 (Tex. Cr.App.1976); *Truitt v. State*, 505 S.W. 2d 594 (Tex.Cr.App.1973); *Evans v. State*, 530 S.W.2d 932 (Tex.Cr.App.1975); *McDougald v. State*, 547 S.W.2d 40 (Tex. Cr.App.1977)." See also *Dickey*, supra (1986); *Miller*, supra (1987).

█ In the Fifth Circuit Court of Appeals the rule is well established that, when attempting to prove voluntary consent to search following an illegal stop, the Government has a much heavier burden to satisfy than when proving consent to search after a legitimate initial stop or arrest. *United States v. Jones*, 475 F.2d 723 (5th Cir.1973); *United States v. Ballard*, 573 F.2d 913, 916 (5th Cir.1978); *United States v. Troutman*, 590 F.2d 604, 606 (5th Cir.1979); *United States v. Ruigomez*, 702 F.2d 61, 65 (5th Cir.1983); *United States v. Melendez–Gonzalez*, 727 F.2d 407, 414 (5th Cir.1984). And, in addition to proving voluntary consent to search, the Government must also establish the existence of intervening factors which prove that the consent was sufficiently attenuated from an illegal stop or arrest. *Bretti v. Wainwright*, 439 F.2d 1042, 1045 (5th Cir.

1971), cert. den. 404 U.S. 943, 92 S.Ct. 293, 30 L.Ed.2d 257; *Melendez–Gonzalez,* supra, at 414.

In *United States v. Ballard,* supra, the Court found the stop in violation of the Fourth Amendment but observed that this did not mean the evidence was necessarily admitted improperly for "... in this circuit, consent can, in proper circumstances, validate a search following an illegal arrest...." The Court cited *Bretti v. Wainwright,* supra, and *United States v. Fike,* 449 F.2d 191 (5th Cir.1971). However, the Court held that the "proper circumstances" were not present and Ballard's consent was not valid.

In *Bretti,* supra, the Court noted that consent to search is not to be lightly inferred and the court should be alert when it is contended that consent is the product of an illegal arrest. "Cf. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)" Nevertheless, the Court held a "waiver" of constitutional rights is possible following an illegal arrest.

In *Fike,* supra, the Court in discussing *Bretti,* stated:

"This court [in *Bretti*] assumed the arrest was illegal without deciding the question but held that the subsequent consent was untainted. In reaching this conclusion the court considered (1) the absence of the use of coercive tactics in securing the consent and (2) the presence of 'significant intervening occurrences' between the alleged illegal arrest and the acquisition of the evidence sought to be used. 439 F.2d at 1045. These "occurrences" included a warning that the defendant had a right to refuse consent, that anything found could be used against him, and that he had a right to consult with an attorney. Finding the consent voluntary and untainted, the court assumed *sub silentio* that the causal connection was broken and the evidence seized as a result of the search based on consent was untainted and admissible."

In *Fike,* as in *Bretti,* the consent following an illegal arrest was found voluntary and untainted because of "significant intervening occurrences."

█ It should be clear from the above authorities that a finding that a defendant's consent to search was voluntarily given is but one step in the determination of the propriety of the search, because even if the consent were voluntary, it still may have been obtained by the exploitation of an illegal arrest. The question then becomes whether the consent to search was obtained by the exploitation of an illegal arrest or detention or "by means sufficiently distinguishable to be purged of the primary taint." *Brown v. Illinois,* 422 U.S. 590, 599, 95 S.Ct. 2254, 2259, 45 L.Ed.2d 416, 424 (1975), quoting *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 445 (1963).

In making this determination a number of courts in determining the propriety of a search by consent have utilized the factors set forth in *Brown* by the United States Supreme Court to be considered in determining whether a voluntary confession was obtained by the exploitation of an illegal arrest.

In *People v. Odom,* 83 Ill.App.3d 1022, 39 Ill.Dec. 406, 404 N.E.2d 997 (Appellate Court, Illinois, 3rd Dist.—1980), the Court wrote:

"The United States Supreme Court has held that in the case of voluntarily given confessions, voluntariness for fifth amendment purposes is but a threshold requirement for fourth amendment analysis. (*Dunaway v. New York* (1979) 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824; *Brown v. Illinois,* (1975), 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416). Although in situations involving consent, voluntariness is not examined in light of the fifth amendment, as it is in confession cases, such a distinction is beside the point. What is of concern is whether some inculpatory action by an arrestee, albeit voluntary, was obtained by the exploitation of an illegal arrest by a police officer, which as a consequence violates the constitutional safeguard of the fourth amendment so as to require application of the exclusionary rule. The in-

culpatory action on the part of the arrestee can take the form of a consent to search just as easily as it can a confession, and for the purposes of the fourth amendment there is no substantive difference between the two. We see no reason why *Brown* and its progeny should not be extended to include cases such as this involving a voluntary consent to search given after an illegal arrest.

\* \* \* \* \* \*

"We find these factors [identified in *Brown*] to be equally as applicable in determining whether a voluntary consent to search was sufficiently attenuated by the taint of an illegal arrest."

In *State v. Rodriguez,* 32 Wash.App. 758, 650 P.2d 225, 228 (Court of Appeals–Div. 2–Washington 1982), the Court stated:

"The Supreme Court [Washington] in *State v. Shoemaker,* supra [85 Wash.2d 207, 533 P.2d 123 (1975)] ruled that a search by consent was proper notwithstanding the possible illegality of the original entry or arrest of the defendant. Two other cases are illustrative of this point. In *Bretti v. Wainwright,* 439 F.2d 1042 (5th Cir.1971), cert. denied 404 U.S. 943, 92 S.Ct. 293, 30 L.Ed.2d 257 (1971), the court upheld a consensual search in spite of the claimed illegality of the arrest, stating that warning of the defendant's rights help insure that the consent is free and voluntary and untainted by the possible illegality of the arrest. In *United States v. Troutman,* 590 F.2d 604 (5th Cir.1979), a consensual search followed an illegal detention where the defendant freely consented after being advised of his right to allow or refuse to allow the search."

In *United States v. Recalde,* 761 F.2d 1448, 1457, 1458 (10th Cir.1985), the Court wrote:

"The Supreme Court has consistently held that evidence obtained after an illegal arrest or seizure must be suppressed as the fruit of the illegal detention. *See Hayes [v. Florida],* 470 U.S. [811] at 813–14, 105 S.Ct. [1643] at 1645 [84 L.Ed.2d 705] (1985); *Royer,* 460 U.S.

at 507–508, 103 S.Ct. at 1329–1330; *Dunaway,* 442 U.S. at 216–19, 99 S.Ct. at 1396. *There is, however, no per se rule prohibiting use of such evidence,* and a defendant's consent may, under certain circumstances, remove the taint of an illegal detention. *See Dunaway,* 442 U.S. at 216–17, 99 S.Ct. at 2258–59; *Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975); *see also United States v. Troutman,* 590 F.2d 604, 606 (5th Cir.1979); *United States v. Ballard,* 573 F.2d 913, 916 (5th Cir.1978); *cf. United States v. Davis,* 456 F.2d 1192, 1194 (10th Cir.1972). Voluntariness is a question of fact to be determined from the totality of the circumstances, *Schneckloth,* 412 U.S. at 227, 93 S.Ct. at 2047, and we accept the trial court's finding unless it is clearly erroneous, *[United States v.] Cooper,* 733 F.2d [1360] at 1364 [10th Cir. 1984]. When attempting to establish that there was voluntary consent after an illegal stop, however, the Government has a heavier burden to carry than when the consent is given after a permissible stop. *Troutman,* 590 F.2d at 606; *Ballard,* 573 F.2d at 916.

"Moreover, when consent is obtained after an illegal arrest, the Government must establish a break in the causal connection between the illegality and the evidence thereby obtained. *Dunaway,* 442 U.S. at 217–18, 99 S.Ct. at 2259–60; *Brown,* 422 U.S. at 602–605, 95 S.Ct. at 2261–2263. An alleged voluntary act must be 'sufficiently an act of free will to purge the primary taint' of the illegal detention. *Id.* at 602, 95 S.Ct. at 2261 (quoting *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 419, 9 L.Ed.2d 441 (1963)." (Emphasis supplied.)

For other cases holding that while an illegal stop does not automatically invalidate a consent to search neither will a voluntary consent automatically validate a search which follows an illegal stop. See *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1219, 75 L.Ed.2d 229 (1983); *United States v. Rambo,* 789 F.2d 1289 (8th Cir.1986); *State v. Angel,* 356 So.2d 986 (La.1978);

*McCrary v. State*, 486 So.2d 1247 (Miss. 1986).

██ As *Recalde*, supra, made clear there is no *per se* rule prohibiting the use of evidence obtained as a result of a consent search following an illegal arrest, stop or detention. In *United States v. Wellins*, 654 F.2d 550 (9th Cir.1981), the Court stated, "Such an approach [per se] is improper; it is an incorrect legal standard." See also *Bretti v. Wainwright*, supra; *United States v. Rambo*, supra, and a host of Texas cases already cited, and *Adkins v. State*, 717 S.W.2d 363, 366 (Tex.Cr.App. 1986), rejecting a per se rule.[3]

In *Brown* the Supreme Court identified the following factors to be considered in determining whether a confession given following an illegal arrest is sufficiently attenuated to permit the use of the confession at trial. They are (1) whether *Miranda* warnings were given; (2) the temporal proximity of the arrest and confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. See also *Dunaway v. New York*, 442 U.S. 200 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982).

In confession cases this Court has applied the *Brown* factors. See, e.g., *Green v. State*, 615 S.W.2d 700 (Tex.Cr.App.1980), cert. den. 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981); *Bell v. State*, 724 S.W.2d 780 (Tex.Cr.App.1986); *Self v. State*, 709 S.W.2d 662 (Tex.Cr.App.1986). And more recently, *Brown* has been applied in a consent to search case. *Miller v. State*, 736 S.W.2d 643 (Tex.Cr.App.1987).

In applying the *Brown* factors to a consent to search some courts number the factors differently than above and refer only to three factors of *Brown* but invari-ably discuss the *Miranda* warnings in their analysis usually as an intervening circumstance.

Justice Powell, concurring in *Brown*, referred to the factors as "the general factors." Justice Rehnquist (now Chief Justice), dissenting in *Dunaway*, referred to the factors as the "several factors." The Supreme Court has never said the factors were exclusive or assigned equal weight to each of the factors. See *Self v. State*, supra, 709 S.W.2d at 668. The Court in *Brown* wrote that the "question whether a confession is the product of a free will under *Wong Sun* must be answered on the facts of each case. No single factor is dispositive. . . ." 422 U.S. at 603, 95 S.Ct. at 2261.

And it should be noted that "the *Brown* test does not require that each of the factors set forth be resolved in favor of the Government." *United States v. Wellins*, 654 F.2d 550 (9th Cir.1981).

"The absence or presence of one of these factors is not a per se indication of free will sufficient to break the illegality of the arrest and the evidence sought to be suppressed. . . .

"Nor will one factor automatically bar a finding of sufficient free will. E.g. *United States v. Cox*, 5 Cir.1972, 459 F.2d 968 (taint of illegal arrest was sufficiently dissipated although evidence was obtained within one hour of arrest)." *United States v. Wilson*, 569 F.2d 392, 396 (5th Cir.1978).

██ While the Supreme Court itself has not yet applied the *Brown* factors in a consent to search case, and while we do not consider such factors absolutely controlling in consent to search following an illegal arrest or detention cases, such factors are guidelines in determining the question before us in the instant case.[4]

---

3. In *Daniels v. State*, 718 S.W.2d 702 (Tex.Cr. App.1986), cert. den. 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252, it was held that the illegality of the stop fatally tainted the consent to search, valid or not. *Daniels* was overruled sub silentio by *Miller v. State*, 736 S.W.2d 643 (Tex.Cr.App. 1987). To the extent it can be interpreted as establishing a per se rule in Texas, *Daniels* is expressly overruled.

4. In *Miller*, supra, 736 S.W.2d at 649, 650, this Court, applying *Brown v. Illinois*, supra, to a consent to search case, purported to list the *Brown* factors but listed six factors instead of four, some expressly pertaining only to consent to search although *Brown* involved a confession. This appears to be a misprint or misstatement. Under any circumstances the derivation of some

▇▇▇▇▇▇ In the instant case it is undisputed that the *Miranda* warnings were given to the appellant by Captain Ramon Ramirez of the El Paso Police Department shortly after the stop of the automobile, and after Ramirez had explained to the appellant the purpose or reason for the stop. However, as the Supreme Court made clear that *Miranda* warnings by themselves, do not purge the taint of an illegal arrest or stop as *Brown* made clear, though, *Miranda* warnings are an important factor in determining whether the confession was obtained by exploitation of an illegal arrest. 422 U.S. at 603, 95 S.Ct. at 2261. See also *Taylor v. Alabama*, 457 U.S. 687, 690, 102 S.Ct. 2664, 2666, 73 L.Ed. 2d 314, 319 (1982).[5]

The second factor is the temporal proximity of the arrest or stop and the confession or the consent to search. The exact time between the stop and consent to search is not revealed by the instant record. It does appear that the written consent to search was executed shortly after the stop and the giving of the *Miranda* warnings.

The second factor is apparently based on the reasoning that the shorter the time, the more likely the taint of the illegal arrest or stop has not been purged. In *Brown* it was deemed significant that "less than two hours" separated the arrest and confession. In support of the proximity factor the Supreme Court cited five Court of Appeals decisions. The time span in these cases ranged from contemporaneous to five days and the decisions turned, not on the time span itself, but rather on the occurrences during the time lapse. See LaFave, Search and Seizure, 2nd Ed., Vol. 4, § 11.4, p. 393 (1987); Note, 25 Emory L.J. 227, 240–41 (1976); Comment, 13 Houston L.Rev. 753, 767 (1976).

▇▇▇▇ An assumption that the mere passage of time between an arrest or stop and the confession or consent to search increases the likelihood of the subsequent confession or consent being untainted is not sound. See *LaFave*, supra, Vol. 4, § 11.4(b), p. 393 (1987). An illegal custody becomes more oppressive as it continues uninterrupted and may bring about other Fourth Amendment violations under *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), where the Supreme Court recognized that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint on liberty following arrest. See Comment, 13 Houston L.Rev. 753, 770–771. It has been held that the lack of a significant intervening period of time does not, in itself, require that the evidence is suppressed for want of sufficient attenuation. See *United States v. Rodriguez*, 585 F.2d 1234, 1239, 1242 (5th Cir.1978), cert. den. 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980); *United States v. Wellins*, 654 F.2d 550, 555 (9th Cir.1981); see also *Commonwealth v. Jackson*, 459 Pa. 669, 331 A.2d 189 (1975).

In *Bell v. State*, 724 S.W.2d 780 (Tex.Cr. App.1986) (a confession case), this Court observed in a confession case that the temporal proximity factor "is generally not a strong determining factor per se...." And it has elsewhere been said to be "the least determinative factor involved." Comment, 13 Houston L.Rev. 753, 764 (1976). Justice Stevens, concurring in *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), observed:

> "The temporal relationship between the arrest and confession may be an ambiguous factor. If there are no relevant intervening circumstances, a prolonged detention may well be a more serious

---

factors are unclear. In the instant case we will apply the four factors of *Brown*.

**5.** It should be noted that there is no requirement that an officer inform an accused of his right to refuse to consent to a search in order for the consent to be voluntary and valid. *Schneckloth v. Bustamonte*, supra; *DeVoyle v. State*, 471 S.W.2d 77 (Tex.Cr.App.1971); *Arm-*

strong, supra, at 32 (opinion on rehearing); *Meeks v. State*, 692 S.W.2d 504 (Tex.Cr.App. 1985). However, the giving of such warning is good police practice before attempting to secure a consent to search, *DeVoyle*, supra, and a showing of such warning is of evidentiary value in determining whether a valid consent was given. *Meeks*, supra.

exploitation of an illegal arrest than a short one."

In *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2550, 65 L.Ed.2d 633 (1980), it appears that a shorter lapse of time will be tolerated when the circumstances of the detention are less severe.

■ A valid consent search is an acceptable investigative tool used by law enforcement officers. It is used both where probable cause is present as well as when probable cause is lacking and no arrest or search warrant could be obtained. Where consent is properly obtained, evidence uncovered may be used when there existed no other lawful basis for the search. Further, where consent is given and nothing incriminating is found both the police and suspect may benefit. The suspect may be cleared and released if detained [6] and the police may denote their attention to other suspects or other matters. See generally LaFave, Search and Seizure, Vol. 3, § 8.1, pp. 147–148 (2d ed. 1987).

With regard to a consent to search of an automobile on a public highway such as in the instant case, the claimed consent most frequently will follow close on the heels of the stop, legal or illegal. To detain a suspect on the highway or remove him to a police station in order to allow a proper lapse of time may create more Fourth Amendment problems than it solves. See *Gerstein v. Pugh*, supra.

While the temporal proximity factor must be placed on the appellant's side of the ledger, it is difficult to give it alone much weight without consideration of all other factors.

■ The next factor to be considered under *Brown* is the presence of intervening circumstances. In addition to the explanation for the stop and the giving of the *Miranda* warnings, Captain Ramirez, after requesting permission to search the rented vehicle for narcotics, gave the appellant an opportunity to consult privately with his companion in the car. Ramirez stated, "I wanted to make absolutely sure he knew what he was doing." After the conversation appellant told Ramirez "Okay, I'll sign it." Ramirez then filled in the blanks on a printed consent form including the names of appellant and the officers and a description of the vehicle and added the word "narcotics" to the property authorized to be seized and had the appellant initial the amendment to the form. The form reflected appellant had been informed of his right to refuse to consent to a search and to require a search warrant and that appellant's permission to search was being given without threats and promises of any kind. The appellant then read and signed the consent form after it was explained to him. While there was no magistrate at the scene, we conclude that the intervening circumstances were sufficient to place the third factor on the State's side of the ledger.

The fourth factor is the purpose and flagrancy of the official misconduct. The Court in *Brown* gave this factor particular emphasis. In *Brown*, after noting that *Miranda* warnings were not the only factor to be considered, the Court wrote:

"The temporal proximity of the arrest and confession, the presence of intervening circumstances … and, *particularly* the purpose and flagrancy of the official misconduct are all relevant. See *Wong Sun v. United States*, 371 U.S. at 49, 83 S.Ct. 419." (Emphasis added.) See also *Self v. State*, supra.

■ The facts concerning the officers' actions reveal that a tip from a confidential informer about a marihuana transaction, two suspects and the automobile in question was received. Officer Whorton was assigned to the case and later reported to Captain Ramirez that a surveillance of the automobile had confirmed the tip. During the surveillance of the Oldsmobile at Holiday Inn Whorton walked around the car to see if he could smell marihuana and returned and reported to his partner, Officer

---

**6.** Consent searches "may result in considerably less inconvenience for the subject of the search" and they "normally occur on the highway, or in a person's home or office, and under informal and unstructured conditions." See *Schneckloth v. Bustamonte*, 412 U.S. 218, 228, 93 S.Ct. 2041, 2048, 2050, 36 L.Ed.2d 854 (1973).

Beasley. They then unsuccessfully sought other officers to maintain surveillance while they secured a search warrant. Shortly thereafter two men left in the Oldsmobile and drove in the rented car towards the city limits and toward the Carlsbad, New Mexico highway. The stop was then made. The purpose of the stop was explained to the appellant. Captain Ramirez gave *Miranda* warnings informing appellant of his right to refuse to consent to the search and carefully reviewed with him the consent to search form. Further, the officers never suggested that a search would take place if appellant refused to consent to the search. See *Lackey v. State*, 638 S.W.2d 439 (Tex.Cr.App.1983)..

Still further, there was no showing that guns were displayed or threats made or any coercive action taken other than that which is inherent in any arrest or detention.[7]

We cannot conclude that action of the police was flagrant. The stop had no "quality of purposefulness," and it was not an "expedition for evidence" admittedly undertaken "in the hope that something might turn up." *Brown*, 422 U.S. at 605, 95 S.Ct. at 2262.

Further, the arrest or detention may not be flagrantly improper where "the question of probable cause is indeed a close one." *United States ex rel. Wright v. Cuyler*, 563 F.2d 627, 631 (3rd Cir.1977). And in W. LaFave, Search and Seizure, (2d ed. 1987), Vol. 4, § 11.4(b), p. 396, it is stated: "... suppression is less likely where the illegality is an arrest slightly short of probable cause after a lawful stopping for investigation or an arrest on evidence which would be sufficient but for its acquisition during a stopping for investigation on grounds barely insufficient or when the arresting officers were not contemplating the possibility of post-arrest questioning."

The fourth factor is placed on the State's side of the ledger. The prosecution has met its burden.

We conclude from a totality of the circumstances that appellant's consent to the search of the trunk of his rented automobile was voluntary and was sufficiently a product of his free will that it would attenuate the taint of the stop of the appellant, assuming that the stop was illegal.

The El Paso Court of Appeals concluded that the warrantless consent search was authorized regardless of the impropriety, if any, in the stop and cited *Lopez v. State*, 663 S.W.2d 587 (Tex.App.–Houston [1st] 1983, PDR refused), and *Myers v. State*, 680 S.W.2d 825 (Tex.App.–Amarillo 1984, PDR refused). *Lopez* is not exactly in point. There the court found the investigative stop to be proper and then proceeded to determine that the consent was voluntary from the totality of the circumstances. There was no consideration of any taint from an illegal arrest or stop. *Myers* is more in point. The arrest was deemed to be illegal, but the court, notwithstanding the illegality of the arrest, determined the consent to search was voluntary from the totality of the circumstances, and further that the evidence showed the consent to be sufficiently an act of free will to purge the primary taint of the illegal arrest citing *Brown v. Illinois*, supra. The Amarillo court in *Myers* noted at the time that no Texas authority had been cited or found on the precise issue.

, The Court of Appeals reached the right result and entered a correct judgment. The judgment of the Court of Appeals is affirmed.

TEAGUE, J., dissents.

CLINTON, Judge, dissenting.

In an unpublished opinion the court of appeals affirmed the judgment of conviction for possession of marihuana over four ounces, based on a jury verdict that found appellant guilty, assessed punishment at seven years confinement and recommended probation. *Juarez v. State* (Tex.App.–El Paso No. 08–84–00277–CR, delivered May 1, 1985).

---

7. The manner in which the consent form was executed has been described. It is noted that after such consent was obtained the search did

not commence until a United States Customs dog was brought to the scene and gave a "reaction when sniffing at the trunk of the car."

The offense was discovered after officers made a warrantless stop of the vehicle occupied by appellant and a companion. Though appellant challenged the stop for want of probable cause, because he thereafter signed a consent to search the Court of Appeals applied the following proposition:

"With the consent, the search was authorized even without a warrant, *regardless of any impropriety in the initial stop.* Lopez v. State, [663 S.W.2d 587 (Tex. App.–Houston [1st] 1983), PDR refused]; Myers v. State, 680 S.W.2d 825 (Tex.App. —Amarillo 1984, PDRR)." *

Without digressing now to analyze either *Lopez* or *Myers,* supra, I would point out that only recently this Court *found* just the contrary, *viz:*

"We need not reach that issue because the consent, valid or not, was the result of an illegal stop and thus fatally tainted by the illegality of the stop. *United States v. Glass,* [741 F.2d 83 (CA5 1984)]; *United States v. Ballard,* 573 F.2d 913, 916 (CA5 1978)."

*Daniels v. State,* 718 S.W.2d 702 (Tex.Cr. App.1986), cert. denied, *Texas v. Daniels,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986).

The expressed reason for decision of the El Paso Court is erroneous as a matter of law. As the majority recognizes, "The El Paso Court of Appeals concluded that the warrantless consent search was authorized *regardless of any impropriety in the stop* [.]" At 783. And in saying the El Paso Court "reached the right result," *id.,* at 783, the majority also acknowledges that conclusion of law, the reason for decision of the El Paso Court, is incorrect.

As the Court has done in similar circumstances on countless occasions, and just recently in this precise situation, *Brick v. State,* 738 S.W.2d 676 (Tex.Cr.App.1987), we should vacate its judgment and remand the cause for reconsideration in light of *Daniels v. State,* supra, as explicated in *Brick v. State,* supra, n. 7 and accompanying text at 680–681.

* All emphasis is supplied throughout by the writ-

But rather than remand the cause the majority opts to undertake the job of the court below, and along the way pauses to set up *Daniels* as a strawman to bash a *"per se* rule." See at 780, n. 3.

That *Daniels* did not create any such *per se* rule is made clear in *Brick v. State,* supra, *viz:*

"... This holding should not be interpreted to mean that any consent obtained following an illegal detention or arrest will be deemed inadmissible *per se....* Rather, we simply determined on the facts of *Daniels* that the defendant's permission to search ... was fatally tainted irrespective of whether it was voluntary. Compare *Florida v. Royer,* [460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) ]."

*Id.,* at 680, n. 7.

The majority somehow divines that the Court overruled *Daniels sub silentio* in *Miller v. State,* 736 S.W.2d 643 (Tex.Cr. App.1987). However, there is no indication in *Miller* that the Court had *Daniels* on its mind, and nothing in the opinion suggests that *Daniels* was wrongly decided.

Indeed, in the instant majority opinion is a long excerpt from LaFave, patron saint of search and seizure law, At 776, in which at the end he points out:

"But, while it is thus true that a consent which fails the voluntariness test because of a prior illegality may just as convincingly be said to be a fruit of the prior illegality, the fruit of the poisonous tree doctrine also extends to invalidate consents which *are* voluntary."

3 LaFave, *Search and Seizure* (2d Ed.1987) § 8.2(d), at 189–190 (emphasis by LaFave). In *Miller v. State,* supra, along with other authorities, the Court directed attention to the same § 8.2(d) in that treatise. Likewise, in *Brick v. State,* supra, we quoted from § 8.2(d) and discussed other decisions of the Court to conclude:

"... We now *hold* that before it can be determined that evidence derived from a warrantless but consensual search following an illegal arrest is admissible, it

er of this opinion unless otherwise indicated.

must be first found, by clear and convincing evidence, not only that the consent was voluntarily rendered, but also that due consideration of the additional factors listed above [by LaFave] militates in favor of the conclusion that the taint otherwise inherent in the illegality of the arrest has dissipated. The burden, of course, is on the State."

*Id.,* at 681.

Thus my primary disagreement with the majority concerns the proper reviewing role of this Court, and is essentially conceptual in nature. In my view this Court was granted jurisdiction, power and authority to determine to review, and to review, decisions of courts of appeals on matters of law that constitute the reasons given for decision. Article V, §§ 5 and 6; Articles 4.03, 4.04, § 2, 44.45(a), (b) and (c), V.A.C.C.P.; Tex.R.App.Pro, Rules 90(a), 200(a), (b) and (c), 202(a), (d)(4) and (5), and 223(a); see *Degrate v. State,* 712 S.W.2d 755 (Tex. Cr.App.1986). Once this Court decides, as here, that the reason for decision given by a court of appeals is erroneous as a matter of law, Constitution, statutes and rules all contemplate that the cause be returned to the court of appeals for it to exercise the unique power and authority retained by that court under Article V, §§ 5 and 6 and other provisions cited above.

Accordingly, my dissent is to the refusal of a majority to remand the cause to the El Paso Court of Appeals for further proceedings not inconsistent with the applicable rule of law we have laid down.