**Carl Roland WALTON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–90–00727–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 12, 1992.

DeEdward J. Greer, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Kimberly Aperauch Stelter, Harriet Zivley, Asst. Attys., Houston, for appellee.

Before TREVATHAN, C.J., and COHEN and O'CONNOR, JJ.

## OPINION

COHEN, Justice.

Appellant was convicted by a jury of possessing less than 28 grams of cocaine. The court assessed punishment of 10 years imprisonment.

Appellant's first point of error contends the cocaine was seized illegally in violation of the fourth amendment to the United States Constitution and article I, section 9 of the Texas Constitution. He contends the trial judge erroneously overruled his motion to suppress because the police conduct in stopping him constituted an illegal seizure. The third point of error contends the same constitutional rights were violated when police searched appellant's suitcase and person, following his detention. We consider these points together.

*Summary of facts*

Officer Gann of the Houston Police Department narcotics division was working at the airport monitoring flights for potential drug couriers when he observed appellant. Appellant appeared nervous and was looking behind him, and appellant became more nervous as the officers followed him. Gann stated this attracted his attention because it was part of a drug courier's profile. Gann also testified appellant walked to the metal detector, hesitated, turned around, and walked away. Appellant then obtained change and went to a pay television. The television was on, but, instead of watching it, appellant looked around the airport for about 45 minutes to an hour. Appellant held his suitcase close to him, and when he sat, he put his leg over the suitcase. Appellant met a Latin American male, and they started to walk out of the airport. Gann then approached appellant, identified himself as a police officer, and asked if appellant would talk to him. Gann asked if appellant had just arrived on a flight, and appellant told him he was about to leave with the people he met. Gann stated he wanted to know if appellant had flown into Houston that day, and appellant said he had come from Cleveland. The officer asked for appellant's ticket and found the name on the ticket was different than on appellant's driver's license. Appellant explained that someone else purchased the ticket for him. Gann then asked if appellant had illegal narcotics in his suitcase or on his person, and appellant stated he did not. Gann next asked to search appellant's bag. Gann testified appellant

said that he would open the bag and show Gann what was in it. Gann saw a Vanish bath crystals can in the suitcase, and Gann's partner saw a Shell oil can in the suitcase. Upon questioning, appellant opened the Vanish can and crystals spilled out. Gann's partner then asked to see the Shell oil can, picked it up, unscrewed the bottom of the can, and found a large sum of cash in it. Gann checked the Vanish can and also found cash. Gann told appellant he was going to keep the money and go to his office to continue the investigation, and appellant could accompany them or leave. Gann stated that appellant said he wanted to stay with his money, and accompanied them to the office. A third officer brought the Latin American male and his female companion to the office.

The police then hid the money in a desk and put the suitcase in a separate room. A drug detection dog was brought in to sniff the suitcase and search the room where the money was hidden. The dog went to the drawer where the money was hidden, pulled the drawer open with his teeth, and grabbed the money. The dog also alerted on the suitcase, indicating it had been near narcotics. Officer Farrell then took appellant to another room to search for weapons. Although appellant had previously shown his identification to the police, Farrell requested identification again. As he had done previously, appellant was attempting to take his wallet from his back pocket and provide his driver's license when Farrell took the wallet away from him. He then searched appellant's wallet and found the packet of cocaine that is the basis of this prosecution.

*Standard of review*

■ The admissibility of evidence generally rests in the trial judge's sound discretion. *Nubine v. State*, 721 S.W.2d 430, 432 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd). The decision will be reversed only for abuse of discretion. *Id.* The trial court is the sole fact finder in a suppression hearing, and may believe all, part, or

none of any witness' testimony. *Rumbaugh v. State*, 629 S.W.2d 747, 752 (Tex. Crim.App.1982). The evidence is viewed in the light most favorable to the trial court's ruling in determining whether the trial court abused its discretion in denying the motion to suppress. *Daniels v. State*, 718 S.W.2d 702, 704 (Tex.Crim.App.1986).[1]

*Investigative detention*

■ The fourth amendment prohibits unreasonable searches or seizures by government officials. Not all encounters between police and citizens invoke the protection of the fourth amendment, because police, like anyone else, may ask questions of their fellow citizens. *Daniels*, 718 S.W.2d at 704. Only when the questioning becomes a detention, however brief, must it be supported by reasonable suspicion under the fourth amendment. *Id.*

■ In *Holladay v. State*, 805 S.W.2d 464, 471 (Tex.Crim.App.1991), the court addressed airport investigative detentions. The officer told Holladay he was a police officer, but did not state he was a narcotics officer. *Id.* at 471. Holladay agreed to talk. *Id.* The officer asked if Holladay had arrived in Houston on a flight, asked to see Holladay's ticket, and asked for identification after receiving untruthful responses from Holladay. *Id.* The court held the encounter was consensual at that point and did not implicate fourth amendment protections against unreasonable searches or seizures. *Id.* The officer then told Holladay he was investigating narcotics and asked permission to search Holladay's bag. *Id.* at 471–72. He told Holladay he could refuse the search, and testified that, at that time, Holladay was free to leave. *Id.* at 472. The court found that the request for permission to search the bag converted the encounter into an investigative detention, implicating fourth amendment rights. *Id.* Based on *Holladay*, we hold appellant was detained when Officer Gann asked to search his bag.

---

**1.** In *Juarez v. State*, 758 S.W.2d 772, 780 n. 3 (Tex.Crim.App.1988), the court overruled the holding in *Daniels* that an illegal detention always invalidates any subsequent consent to search.

■ The next inquiry is whether there was justification for the stop. *Daniels*, 718 S.W.2d at 704. To justify a brief investigative detention, the officer must know specific articulable facts, which, in light of his experience and personal knowledge, together with reasonable inferences, would warrant detaining the suspect. *Meeks v. State*, 653 S.W.2d 6, 12 (Tex.Crim.App. 1983). Those specific facts must amount to more than a mere hunch or suspicion. *Id.* Even a temporary detention is not permissible unless the circumstances objectively support a reasonable suspicion that the person detained actually is, has been, or soon will be engaged in criminal activity. *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Crim.App.1991). Circumstances raising suspicion of illegal conduct need not be criminal. *Id.* The issue is not whether the particular conduct is innocent or criminal, but, rather, the degree of suspicion that attaches to particular noncriminal acts. *Holladay*, 805 S.W.2d at 471. At a minimum, however, the suspicious conduct must differ sufficiently from that of innocent people under the same circumstances so as to clearly set the suspect apart from them. *Crockett*, 803 S.W.2d at 311.

Gann said appellant was nervous and kept looking behind him. Appellant approached a metal detector, hesitated, and then turned around instead of going through the metal detector. He obtained change for a pay television and then sat with the television on, looking around the airport for approximately 45 minutes to an hour, rather than watching television. Appellant held the suitcase close to him when he walked and sat with one leg over the suitcase. He travelled under a ticket with a different name than his driver's license. These facts, taken together and viewed most favorably to the trial court's ruling, are no stronger (and perhaps weaker) than those held insufficient in *Daniels, Crockett*, and *Willis v. State*, 801 S.W.2d 204, 209–10 (Tex.App.—Houston [14th Dist.] pet.ref'd). Consequently, we hold the police had no reasonable suspicion to detain appellant. The detention was illegal under the Texas and United States Constitutions.

*Search during investigative detention*

■ The State contends appellant consented to the suitcase search; therefore, no warrant or probable cause was necessary. A warrantless search is per se unreasonable, subject to several exceptions. *Juarez v. State*, 758 S.W.2d 772, 775 (Tex.Crim. App.1988). Consent is one exception. *Id.* However, the State must prove by clear and convincing evidence that the consent was voluntary. *Id.* Voluntariness is a fact question determined from the totality of the circumstances. *Brem v. State*, 571 S.W.2d 314, 319 (Tex.Crim.App.1978).

■ Gann testified that when he asked to search appellant's bag, appellant said he would open the bag and show Gann what was in it. According to Gann, appellant then opened the bag and said there was nothing there, while standing between Gann, Gann's partner, and the bag, so that the officers could not see into the bag. Gann stated this conduct indicated to him that appellant intended to maintain control over the bag.

Officer Gann testified he asked to search appellant's bag, but he never testified appellant consented. Furthermore, Gann testified he believed appellant intended to maintain control over the suitcase when appellant opened it and said that *he* would show the officers there was nothing in the bag. Gann never testified appellant consented to allow Gann or Gann's partner to inspect or search the cans in the suitcase. There is no clear and convincing evidence that appellant consented to a search of his person or property. The State failed to meet its burden to show voluntary consent. *Juarez*, 758 S.W.2d at 775.

■ Evidence illegally obtained may not be admitted in evidence against the accused. Tex.Code Crim.P.Ann. art. 38.23 (Vernon Supp.1992). The exclusionary rule extends to both direct and indirect products of illegal searches and seizures. *Pichon v. State*, 683 S.W.2d 422, 425 (Tex.Crim.App. 1984), *cert. denied*, 471 U.S. 1137, 105 S.Ct. 2680, 86 L.Ed.2d 698 (1985). The illegal detention, followed by the nonconsensual search of the cans and the discovery of the money led the officers to have a drug de-

tection dog sniff the money and the suit-case, which led to the search of appellant. The cocaine removed from appellant's wallet was obtained as a direct result of the illegal seizure of appellant and search of his property.

The first and third points of error are sustained.

The judgment is reversed, and the cause is remanded.