Garland PETERSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–92–00741–CR.

Court of Appeals of Texas, Houston (1st Dist.).

June 10, 1993.

Karen Zellars, Houston, for appellant.

John B. Holmes, Dist. Atty., Ernest Davila, Asst., Houston, for appellee.

Before WILSON, DUGGAN and MIRABAL, JJ.

## OPINION

WILSON, Justice.

A jury convicted appellant of possession, with intent to deliver, of at least 400 grams of cocaine, and sentenced him to 50–years confinement. In three points of error, appellant contends the trial court erred in admitting his oral statements made during custodial interrogation, and in denying his motion to suppress the cocaine, which he alleges was obtained as a result of an illegal search and seizure. We affirm.

### Fact Summary

Viewed in the light most favorable to the verdict, the record reflects the following events. On March 10, 1992, Houston Police Officers R.B. Stewart and B.E. Corely were conducting narcotics interdiction at the Houston Greyhound Bus Terminal. At around 2:00 p.m., Stewart saw appellant get out of a taxi with a suitcase and enter the bus station "in a very big hurry." Stewart testified the only bus scheduled to leave the terminal around this time was scheduled to leave approximately five minutes after appellant arrived. Appellant immediately got into line at the ticket counter. Stewart was standing nearby and watched appellant look around the bus terminal. When appellant saw Stewart, he stared at Stewart "for a good while." Stewart noticed that appellant became "extremely nervous," but that appellant tried to hide his nervousness by acting very nonchalant. In Stewart's opinion, appellant was stretching and yawning excessively and whistling in an attempt to hide his nervousness. Appellant also struck up several conversations with other people in line. Appellant held on to the relatively large suitcase without putting it down, and did not set it down when he reached the ticket counter. Appellant's suitcase was soft-sided and appeared to be full at the bottom, but collapsed at the top. Stewart also noticed that out of the 10 minutes that appellant was in line, approximately eight were spent looking back at Stewart, who was wearing street-clothes.

Stewart approached appellant after appellant paid cash for his ticket and began to walk down the hallway with his suitcase. As Stewart walked with him down the hallway, he showed appellant his police I.D., told appellant he was a police officer, and stated he would like to speak with him for a moment. Appellant stopped and immediately put the suitcase on the floor a few feet away from his side, turned toward Stewart, and stated "Sure, what's the problem?" Stewart asked appellant where he was traveling to, and appellant responded he was going to St. Louis. Stewart asked if he could see the bus ticket, and appellant handed it to him. Stewart also asked appellant for identification. Appellant patted his pockets as if looking for a wallet and then stated he had none. Appellant told Stewart his name when asked. When Stewart asked how long appellant had been in Houston, appellant responded he was here for about one week to visit friends. However, appellant was not able to provide Stewart with the names of any persons he visited, or the address or general location he had visited.

Stewart then asked appellant if the suitcase belonged to him and if he had packed it himself. Appellant looked down at the suitcase with "a puzzled look on his face" and stated, "Well, it looks like my bag but I'm not sure." Stewart told appellant he had seen him holding the bag at the ticket counter line for 10 minutes. Appellant again responded he was not sure if the bag was his.

At that point, Stewart told appellant he was a narcotics officer conducting an investigation and that he had reasonable suspicion that appellant might be carrying narcotics in his suitcase. Appellant said he wasn't sure if the bag was his, but that he wasn't carrying any narcotics. Stewart asked appellant if he could search the bag, and appellant responded he didn't care because it wasn't his. Stewart reached down to search the bag and noticed it was locked. When asked if he had the key, appellant asked how he could have the key if it was not his bag. Stewart then pulled on the lock and it opened. Stewart unzipped the bag and found five bundles containing co-

caine. Stewart then told appellant he was under arrest.

## I. Oral Statements

In his first point of error, appellant contends the trial court erred in admitting appellant's oral statements made during what appellant alleges was a custodial interrogation because appellant was not advised of his privilege against self-incrimination and right to counsel.

Appellant's basic argument is that Officer Stewart did not have reasonable suspicion to support an investigative detention, and that appellant's continued illegal detention culminated in an illegal search and arrest of appellant. However, appellant provides no argument and cites no authority as to why the admission at trial of his statements to Officer Stewart was error. Appellant does not contend, for example, that he made a confession that was the fruit of an illegal arrest. Indeed, the record does not reveal that appellant made a confession. We find no authority to support appellant's contention that his oral statements to Officer Stewart were improperly admitted at the trial.

Appellant's first point of error is overruled.

## II. Search and Seizure

In his second and third points of error, appellant contends the trial court erred in overruling his motion to suppress because the cocaine is the fruit of appellant's illegal search and seizure in violation of the fourth amendment to the United States Constitution, article I, section 9 of the Texas Constitution, and TEX.CODE CRIM.P.ANN. art. 38.23 (Vernon Supp.1993). We consider these points together.[1]

Specifically, appellant contends that once he told Stewart his destination and produced his ticket to confirm it, Stewart's further questioning of appellant constitut-

ed an illegal detention. Further, appellant contends the search of his suitcase was tainted by his illegal detention and warrantless arrest. We disagree.

### A. Investigative Detention

Not all encounters between police and citizens invoke the protection of the fourth amendment, because police, like anyone else, may ask questions of their fellow citizens. *Walton v. State*, 827 S.W.2d 500, 502 (Tex.App.—Houston [1st Dist.] 1992, no pet.); *see also INS v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984) (police questioning alone is unlikely to result in a fourth amendment violation). Only when questioning becomes a detention, however brief, must it be supported by reasonable suspicion under the fourth amendment. *Walton*, 827 S.W.2d at 502.

There is no per se rule as to when police questioning amounts to a detention. Each case must be decided by an examination of the totality of circumstances surrounding the encounter. *See, e.g., Holladay v. State*, 805 S.W.2d 464, 471 (Tex. Crim.App.1991); *Mitchell v. State*, 831 S.W.2d 829, 833 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). Furthermore, the validity of a consensual search is not dependent upon the existence of reasonable suspicion. *See Florida v. Bostick*, —— U.S. ——, ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991) ("[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual ... ask to examine the individual's identification ... and request consent to search his or her luggage ... as long as the police do not convey a message that compliance is required."). However, if a suspect consents to a search while being illegally detained, the State must prove that the consent was voluntari-

---

1. The appellate brief submitted by appellant combines his arguments under his three points of error. Appellant does not provide separate analysis of his federal and state claims, nor does he indicate how the protections afforded by the federal and state constitutions differ from each other. *See McCambridge v. State*, 712 S.W.2d 499, 501–502 n. 9 (Tex.Crim.App.1986) (where appellate brief does not separate federal and state issues and provide argument under each issue, court may overrule point of error as multifarious). Therefore, we analyze appellant's arguments together.

ly given and not tainted by the illegal detention. *Boyle v. State,* 820 S.W.2d 122, 131 (Tex.Crim.App.1989), *cert. denied,* —— U.S. ——, 112 S.Ct. 1297, 117 L.Ed.2d 520 (1992).

In *Holladay,* police officers on a narcotics detail saw two men, Holladay and Miles, arrive on a plane from Miami. Both men appeared to be nervous. Officer Burnias, who was wearing street clothes, walked next to Holladay and asked to speak with him. Holladay agreed to speak with Burnias. Meanwhile, another officer questioned Miles. As the two men walked, Burnias showed Holladay his police I.D., but did not tell him he was a narcotics officer conducting an investigation. Burnias asked Holladay if he had arrived on a Houston flight, and Holladay responded he did not. Holladay then stopped and turned to Burnias, Burnias repeated the question, and Holladay again denied it. Burnias asked to see his plane ticket, and Holladay responded he did not purchase one. Burnias also asked if Holladay knew Miles or if he had travelled with him, and Holladay denied knowing Miles. Burnias told Holladay that Miles admitted knowing Holladay, and then asked Holladay for identification. Holladay handed Burnias his driver's licence, his hands trembling. At one point, Burnias stated he was conducting a narcotics investigation and asked permission to look into Holladay's carry-on bag, informing him he had the right to refuse. Holladay consented, stating he had nothing to hide. *Holladay,* 805 S.W.2d at 466, 471–72.

The Court of Criminal Appeals rejected Holladay's contention that he was detained when Burnias "demanded" that he produce identification. *Id.* at 471. Instead, the court found that under the facts of that particular case, Burnias' request to search the bag, which was a continuum of the initial encounter, converted the initial questioning into a "very brief" detention. *Id.* at 471–72.

In *Walton,* this Court, based upon *Holladay,* found a suspect was detained at an airport after a police officer asked him if he had arrived on a flight, examined his plane ticket and driver's license, asked if

the suspect was carrying illegal narcotics in his suitcase, and asked to search the suitcase. *Walton,* 827 S.W.2d at 501–02. There was no testimony in *Walton* that the suspect consented to the search of his bag. *Id.* at 503. Rather, an officer testified the suspect indicated through his conduct that he intended to maintain control of the bag, and the suspect stated *he* would show the officers there was nothing in there. *Id.* This Court found no voluntary consent was given to search the bag. *Id.*

■ In the present case, as in *Holladay,* appellant agreed to speak with Officer Stewart as the two men continued walking down the hall. Also like in *Holladay,* appellant was the first person to stop walking. We conclude that in the absence of any further display of authority or intimidation, Stewart's continued questioning of appellant, after appellant produced his bus ticket and stated his name, did not constitute a detention per se.

■ Based upon *Holladay,* it appears likely that appellant *was* detained *after* Stewart stated he was conducting a narcotics investigation and asked to search appellant's bag. However, we conclude Stewart had reasonable suspicion to detain appellant at this point. A detention must be supported by reasonable suspicion based on specific, articulable facts which, in light of the officer's experience and knowledge, together with reasonable inferences, would support detaining the suspect. *Mitchell,* 831 S.W.2d at 832–33 ("reasonable suspicion" is more than an unparticularized suspicion or hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence). By the time Stewart stated he was a narcotics officer and asked to search the bag, appellant had exhibited the nervous behavior testified to by Stewart, had been unable to produce identification or state the names of any friends visited or even the general location of his visit, and had wavered about his ownership of the suitcase he arrived with and guarded carefully during his entire time in the bus terminal. Stewart testified he had worked in narcotics interdiction for approximately 15 years and that appellant displayed behavior

consistent with other drug carriers he had witnessed.

### B. Warrantless Search

Unlike *Walton,* appellant specifically consented to the search of the suitcase which, before the search was conducted, he disclaimed ownership of altogether. We now consider whether appellant's consent was voluntarily given.

A warrantless search is per se unreasonable, subject to several exceptions. *Walton,* 827 S.W.2d at 503. Voluntary consent is one such exception. *Id.* The State must prove by clear and convincing evidence that the consent was voluntary. *Id.* This burden requires the State to show the consent given was positive and unequivocal, and there must not be duress or coercion, actual or implied. *Meeks v. State,* 692 S.W.2d 504, 509 (Tex.Crim.App. 1985). However, the State has a much lighter burden when proving consent following a legitimate initial stop than when proving consent following an illegal stop. *Juarez v. State,* 758 S.W.2d 772, 777 (Tex. Crim.App.1988). Voluntariness is a fact question determined from the totality of the circumstances. *Walton,* 827 S.W.2d at 503. The custody of an accused is merely one factor to be considered in determining whether consent is voluntary. *Juarez,* 758 S.W.2d at 775. Given Stewart's legitimate questioning of appellant, we find appellant's statements that the bag was not his and that he "didn't care" if Stewart searched it were sufficiently positive and unequivocal to constitute voluntary consent. Because we conclude appellant voluntarily consented to the search of the bag, we need not consider whether he had a privacy interest in the bag after he disclaimed ownership of it.

### C. Warrantless "Arrest"

Finally, appellant argues that even if Stewart had reasonable suspicion to detain him, Stewart's further questioning of him after appellant stated his·name, how long he had been in Houston, and his destination, demonstrated appellant was not free to leave. Therefore, he asserts, he was under arrest without probable cause and the cocaine was the fruit of a search incident to his illegal arrest. Again, based on *Holladay,* we conclude Stewart's questioning of appellant was at most a "very brief" detention at the point when Stewart identified himself as a narcotics officer and asked to search the bag. *Holladay,* 805 S.W.2d at 472.

Appellant's second and third points of error are overruled, and the judgment of the trial court is affirmed.