# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00688-CR

**Frank Fitzgerald, III, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 57,571, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Frank Fitzgerald, III, was charged with the offense of possession of cocaine. Before trial, Fitzgerald filed a motion to suppress seeking to exclude evidence seized from his car and statements made to the police. He contended that the actions of the investigating law enforcement officers violated his constitutional and statutory rights and that any statements made and any evidence seized were, therefore, obtained in violation of his constitutional and statutory rights. The district court overruled the motion. Fitzgerald pled guilty and was sentenced to ten years' imprisonment. On appeal, he complains that the trial court erred in overruling his motion to suppress. We will affirm the district court's judgment.

## BACKGROUND

At the suppression hearing, Detective Lawrence, one of the officers involved in the arrest, testified about the events leading up to Fitzgerald's arrest. He testified that both he and

Detective Wadley had been sent to Mickey's convenience store in Killeen, Texas, to investigate a possible drug transaction. He stated that, at around nine in the evening, while conversing with individuals involved in that investigation, he and Detective Wadley observed a car pull into the convenience-store parking lot and slowly drive across the parking lot to a gas pump. He stated that the occupants of the vehicle appeared to be looking for someone. The car was driven by Fitzgerald; Fitzgerald's wife, Sheila Fitzgerald, and Fitzgerald's father, Frank Gaddison, were passengers in the car.

Detective Lawrence testified that, although the car pulled up to the gas pumps, none of the occupants of the vehicle pumped gas into the car; Fitzgerald, however, testified that he did pump gas into his car. Detective Lawrence testified that another car entered the parking lot and stopped at the pumps, but none of the occupants of the second vehicle got out to pump gas either. He further testified that Gaddison walked over to the second car and spoke to the driver of the vehicle. However, Detective Lawrence admitted that he did not hear what Gaddison and the second driver were talking about. Detective Lawrence further testified that, after conversing with Gaddison, the driver of the second car got out of the car and had money in his hands.

Detective Lawrence stated that, after the second driver got out of the car, he and Detective Wadley walked over to the two cars to investigate. He testified that he thought it was unusual for people to park at gas pumps, meet with one another, and never pump any gas. He also recounted that, after he and Detective Wadley approached the two cars, he questioned Fitzgerald and Fitzgerald's wife, while Detective Wadley questioned Gaddison and the second driver.

2

Detective Lawrence testified that he asked Fitzgerald what his name was and asked to see some identification. At the hearing, Fitzgerald admitted that he gave the police officer a false name, told the officer his identification was inside the car, and allowed the officer to reach into the car to get his wallet; in his wallet, Fitzgerald had a birth certificate belonging to the individual who Fitzgerald falsely claimed to be. Detective Lawrence admitted that he reached his hand into Fitzgerald's car to retrieve Fitzgerald's wallet but stated that he made no attempt to search the car at that time. Fitzgerald also stated that Detective Lawrence performed a pat-down search on him.

Sometime after Detective Lawrence began questioning Fitzgerald, Detective Brigandi arrived at the convenience store with a narcotics dog.[1] Detective Lawrence testified that, as the dog approached Fitzgerald's car, the dog alerted, indicating the presence of illegal drugs inside the car. Shortly thereafter, the detectives began searching the car and found approximately 140 grams of cocaine. After the drugs were discovered, Sheila Fitzgerald told the police that Gaddison had paid Fitzgerald and her to transport him and the drugs to Killeen.

After the search, Fitzgerald was arrested and charged with the offense of possession of between four and 200 grams of cocaine, a second-degree felony. *See* Tex. Health & Safety Code Ann. § 481.115(a), (d) (West 2003). After his motion to suppress was denied, he pled guilty and was sentenced to ten years' confinement. He appeals the district court's denial of his motion to suppress.

---

[1] The record is unclear whether the canine unit was called to the convenience store in response to the possible drug transaction Detectives Lawrence and Wadley were originally sent to investigate or was called in relation to Fitzgerald's case.

## STANDARD OF REVIEW

In reviewing a trial court's decision to deny a motion to suppress, we "afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). This same level of deference is afforded to trial court rulings on "'application of law to fact questions'" or mixed questions of law and fact when resolution of the questions depends on evaluations of credibility and demeanor. *Id.* (quoting *Villarreal v. State*, 935 S.W.2d 134, 139-41 (Tex. Crim. App. 1996)). However, when the resolution of mixed questions of law and fact do not depend on an evaluation of credibility and demeanor, we apply a de novo standard of review. *See id.* Accordingly, we review de novo the trial court's application of the law of search and seizure to the facts of the case. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

When a trial court denies a motion to suppress and does not file any findings of fact, we must view the evidence "in the light most favorable to the trial court's ruling" and "assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Id.* at 855; *see Pennywell v. State*, 127 S.W.3d 149, 152 (Tex. App.—Houston [1st Dist.] 2003, no pet.).[2] If the trial court's ruling regarding a motion to suppress is reasonably supported by the record and is correct under any applicable theory of law, we must

---

[2] Fitzgerald did not ask the district court to make express findings of fact and conclusions of law. *See State v. Cullen*, No. PD-984-05, Tex. Crim. App. LEXIS 1281, at *9 (Tex. Crim. App. June 28, 2006).

4

affirm the trial court's judgment. *Romero v. State*, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990); *see Pennywell v. State*, 127 S.W.3d 149, 152 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

## DISCUSSION

On appeal, Fitzgerald contends that the police improperly detained him without reasonable suspicion of criminal activity occurring. Specifically, Fitzgerald argues that the police failed to present facts which, when combined with rational inferences, would have allowed the police to reasonably suspect that Fitzgerald had engaged, was engaging, or soon would engage in criminal activity. Therefore, he asserts that his detention was impermissible. He also argues that, after first being questioned by police, he was impermissibly detained until the canine unit arrived. In either case, he argues that the evidence obtained and the statements made during the impermissible detainments were inadmissible.

In support of these assertions, Fitzgerald points to Detective Lawrence's testimony that none of the activities he observed prior to questioning Fitzgerald were violations of the law. Further Fitzgerald points to Lawrence's testimony that it was not out of the ordinary for people to drive slowly through a parking lot, to look around while driving through a parking lot, or to get out of the car after parking at a convenience store. He also notes that Detective Lawrence admitted that one reason someone might drive slowly through a convenience store parking lot is for safety. Finally, Fitzgerald points to Detective Lawrence's statement that he had no reason to search Fitzgerald's car prior to the arrival of the canine unit.

5

There are three different types of interactions between police and citizens: (1) encounters, (2) detentions, and (3) seizures. *Pennywell v. State*, 127 S.W.3d 149, 152 (Tex. App.—Houston [1st Dist.] 2003, no pet.). "An encounter occurs when a law enforcement officer approaches an individual in public to ask questions." *Id.* The officer does not have to have a justification for initiating an encounter, and the encounter "triggers no constitutional protections." *Id.*; *see also Florida v. Bostik*, 501 U.S. 429, 434 (1991) (as long as encounter remains consensual in nature, heightened scrutiny required by Fourth Amendment need not be applied). In other words, the officer does not need probable cause or reasonable suspicion to initiate a consensual encounter. *See Hayes v. State*, 132 S.W.3d 147, 151-52 (Tex. App.—Austin 2004, no pet.); *see also State v. Velasquez*, 994 S.W.2d 676, 678 (Tex. Crim. App. 1999) (issues of probable cause and reasonable suspicion do not arise when officer approaches citizen to engage in conversation).

In an encounter, a police officer may approach an individual and ask the individual if he is willing to answer some questions. *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion); *see also Peterson v. State*, 857 S.W.2d 927, 930 (Tex. Crim. App. 1993) (police may ask questions of fellow citizens). However, the individual does not have to answer any questions asked, may refuse to listen to the questions, and may leave the situation. *See Royer*, 460 U.S. at 497-98; *see also Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995) (in consensual encounter, citizen free to ignore officer and walk away). In a consensual encounter, police officers may also ask to see an individual's identification and ask for consent to search. *Johnson*, 912 S.W.2d at 235; *see also Bostik*, 501 U.S. at 435 (in encounter, police may ask for consent to search individual's luggage). As long as the individual has not been detained, then no constitutional rights have been

6

violated. *Royer*, 460 U.S. at 497-98 (1983); *see also Bostik*, 501 U.S. at 434 (detainment does not occur simply because police approach and question individual); *Peterson*, 857 S.W.2d at 930 (only when questioning becomes detention must officer have reasonable suspicion). Consequently, the State may introduce as evidence statements an individual makes in an encounter without violating the Fourth Amendment. *Royer*, 460 U.S. at 497.

In determining whether a detention has occurred, the critical analysis is "whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Bostik*, 501 U.S. at 437 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)); *see Pennywell*, 127 S.W.3d at 152; *see also Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997) (in determining whether detention has occurred, courts must look at totality of circumstances). It is only when an officer has conveyed that compliance with his requests is required that an encounter becomes a detention. *Hunter*, 955 S.W.2d at 106; *see also Johnson*, 912 S.W.2d at 236 (seizure of citizen does not occur until reasonable person would believe he was not free to leave and either yields to officer's show of authority or has been physically forced to yield).

We first note that the district court made no findings of fact when it denied the motion to suppress. Therefore, we must view the evidence in the light most favorable to the denial and assume that the court made implicit findings supported by the record. *See Ross,* 32 S.W.3d at 855. Second, there is nothing in the record that suggests that the interaction between Fitzgerald and the police, prior to the arrival of the canine unit, was anything more than an encounter or that Fitzgerald

7

was detained until the arrival of the canine unit. Rather, the evidence in the record is consistent with the right afforded police officers to ask questions of their fellow citizens.

Nothing in Detective Lawrence's testimony suggests that he communicated to Fitzgerald that Fitzgerald was not free to ignore his questions and leave the convenience store. *See Pennywell*, 127 S.W.3d at 152 (no evidence suggests appellant was not free to refuse to answer officer's questions). Moreover, in his own testimony, Fitzgerald did not state that he believed he had to answer the detective's questions or that he felt that he was unable to leave the premises. There is no evidence that Fitzgerald wanted to terminate the conversation with Detective Lawrence, desired to leave the scene, or attempted to leave the scene but was prohibited from leaving or ordered to stay. Similarly, there is no evidence that Fitzgerald yielded to a show of authority by the police. For example, there is no evidence that the police brandished a firearm, causing Fitzgerald to submit to the officers' requests.

Further, although Detective Lawrence asked to see Fitzgerald's identification, a police officer may ask to see an individual's identification in a consensual encounter. *See Johnson*, 912 S.W.2d at 235. Moreover, there is no indication that, after obtaining the identification, Detective Lawrence performed a warrant check on the identification or retained the identification for any length of time. *Compare Velasquez*, 994 S.W.2d at 679 (court concluded that, under totality of circumstances, officer approaching defendant, asking to inspect defendant's ticket and identification, and asking for permission to search luggage constituted a consensual encounter) *with Hayes*, 132 S.W.3d at 153 (in support of its conclusion that appellant had been detained, court noted officer took appellant's identification and went to police car to run warrant check).

8

In addition, there is no indication that a significant lapse of time occurred between the time Detective Lawrence began questioning Fitzgerald and the arrival of the canine unit or that Fitzgerald was detained until the arrival of the canine unit. *See generally Crockett v. State*, 803 S.W.2d 308 (Tex. Crim. App. 1991) (officer informed individual at train station that he had right to detain individual to conduct canine search of individual's luggage and detained individual until canine unit arrived). *Compare Haas v. State*, 172 S.W.3d 42, 51-52 (Tex. App.—Waco 2005, pet. ref'd) (although in traffic stop context, court noted that there is no preset time limit on traffic stops and relevant question is whether police diligently pursued investigation in manner likely to confirm or deny suspicions quickly and that stop may last as long as reasonably necessary to effectuate purpose of stop) *with Sims v. State,* 98 S.W.3d 292, 294 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (court affirmed denial of motion to suppress in traffic stop case where canine unit arrived twenty minutes after citation given). Rather, the only evidence presented on the issue demonstrates that the canine unit arrived shortly after the police began talking with Fitzgerald: (1) Detective Lawrence testified that the canine unit arrived while he was still talking with Fitzgerald, and (2) Fitzgerald, in his testimony, agreed that he talked with the police for "several minutes."

Finally, although Fitzgerald testified that a pat-down search was performed on him prior to the arrival of the canine unit, nothing in the record indicates that the pat-down led to the discovery of any incriminating evidence. *See Zeigler v. State*, No. 01-05-00233-CR, 2006 Tex. App. LEXIS 4892, *4 (Tex. App.—Houston [1st Dist.] 2006, no pet. h.) (mem. op.) (pat-down led to discovery of cocaine in defendant's pants). Accordingly, we need not consider whether evidence needs to be excluded as the result of an impermissible pat-down search. On the contrary, it was the

9

apparently near-simultaneous alert by a police dog that led to the discovery of the narcotics. Once the trained narcotics dog alerted the officer to the possibility that illegal drugs were inside Fitzgerald's car, probable cause existed to search the vehicle. *See Harrison v. State*, 7 S.W.3d 309, 311 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd); *see also Crockett*, 803 S.W.2d at 310 n.5 (sniff of outside of vehicle by trained canine is not search under the Fourth Amendment). Therefore, the warrantless search of Fitzgerald's car was proper. *See Harrison*, 7 S.W.3d at 311.

Moreover, given our standard of review, we cannot conclude that the pat-down search alone elevated the encounter to a detention. Other than Fitzgerald's statement that a pat-down occurred, there is no other testimony concerning the pat-down search.[3] There is no indication that the pat-down was not the result of Detective Lawrence asking Fitzgerald for consent to be searched. *Cf. Zeigler*, 2006 Tex. App. LEXIS 4892 at *4, 10 (officer approached individual boarding bus and, after conversing with individual, asked if he could search individual's bag and perform pat-down search on individual; court concluded that nothing in record suggests pat-down anything other than voluntary response to officer's request and that interaction was an encounter, not detention).

For all the preceding reasons, we conclude that Fitzgerald has failed to show that the district court erred in denying his motion to suppress. The evidence presented at the hearing demonstrates that Detective Lawrence approached Fitzgerald, asked Fitzgerald questions, and asked to see Fitzgerald's identification. This evidence is consistent with permissible actions that may occur

---

[3] As a credibility determination, the court may have disbelieved Fitzgerald and impliedly found that no pat-down search occurred. Credibility determinations are afforded almost total deference, *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997), and there is nothing in the record to refute this implied finding.

in a consensual encounter between the police and citizens, and nothing in the record demonstrates that the encounter escalated into a detention or that Fitzgerald was impermissibly detained to await the arrival of a canine unit. The district court's ruling is supported by the record, and we, therefore, cannot conclude that the district court abused its discretion in denying Fitzgerald's motion to suppress. Accordingly, we overrule his sole issue on appeal.[4]

## CONCLUSION

Having overruled Fitzgerald's issue on appeal, we affirm the judgment of the district court.

---

David Puryear, Justice

Before Justices B. A. Smith, Puryear and Waldrop

Affirmed

Filed: August 31, 2006

Do Not Publish

---

[4] Because we have concluded that the district court did not err, we need not consider Fitzgerald's arguments that the error was harmful and that the evidence should be excluded as "fruits of the poisonous tree."

11