# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00097-CR

**James Ray Stroud, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
### NO. 18-06185-1, THE HONORABLE BRANDY HALLFORD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

James Ray Stroud was charged with the offense of driving while intoxicated. *See* Tex. Penal Code § 49.04. Prior to trial, Stroud filed a motion to suppress evidence obtained during the police investigation. After a hearing, the trial court denied the motion. Following that ruling, a jury convicted Stroud, and he was sentenced to 120 days' confinement in county jail. *See id.* § 12.22. In two issues on appeal, Stroud contends that the trial court erred by denying his motion to suppress and that the evidence is insufficient to support his conviction. We will affirm the trial court's judgment of conviction.

## BACKGROUND

Stroud was arrested and charged with driving while intoxicated. Stroud filed a motion to suppress the evidence obtained during the investigation that ultimately led to his arrest. The trial court denied the motion to suppress and issued findings of fact and conclusions of law

supporting its ruling, including that the officers had reasonable suspicion to detain Stroud and probable cause to arrest him. At trial, Officers Douglas Look, Keely Adcock, and Joanna Sanders testified regarding their observations on the morning in question, and recordings from the body cameras belonging to Officers Look and Adcock as well as a recording from a camera located inside Officer Look's patrol car were all admitted into evidence and played for the jury. The following summary comes from the testimony and other evidence presented at trial.

At approximately 5:30 a.m., Officer Look was closing out his shift at the police station and drove his patrol car to a gas station to fill up his gas tank. On the way, he saw a car "with its reverse lights on directly next to the police station's parking lot" on a "city easement directly off of US 95." The car was approximately two feet from the highway, was facing the roadway, was sitting on an area between the road and a sidewalk, and was next to but not on a driveway that leads to Stroud's home. The car was outside of the fence to Stroud's property that also separates Stroud's property from the police station parking lot, and there was a telephone pole and a fence post behind the car. After Officer Look finished filling up his gas tank, he returned to the police station a few minutes later and noticed that the car was still sitting in the same area with its reverse lights on, and he decided to inform his supervisor, Officer Adcock, about the situation.

After Officer Look talked with Officer Adcock, they both walked to the car to determine if anything was wrong. Both Officers Adcock and Look testified that the car was sitting in a public space, and Officer Adcock further explained that the public has access to the roadway in front of the car, that the public has access to the sidewalk behind the car, and that there are no barriers preventing the public from stepping onto the grassy area on which the car was located. When Officer Look approached the car, he noticed that the engine was on and that

2

a man later identified as Stroud was sitting in the driver's seat and appeared to be "sleeping with his chin on his chest." Officer Look knocked on the window and yelled at Stroud multiple times in order to wake him. Stroud briefly woke up, looked in Officer Look's direction, and fell back asleep. Officer Look was eventually able to wake up Stroud, asked him to roll down the window, and asked him to place his car in park after he rolled down his window. Stroud did not initially understand the instructions. When Stroud rolled down the window, Officer Look detected a strong odor of alcohol coming from the car.

After Stroud rolled down the window, Officer Adcock asked Stroud to get out of his car, and she noticed "a really strong odor of metabolized alcoholic beverage coming out of the car" when the door was opened. When Stroud got out of his car, he made several unintelligible statements. Stroud leaned on his car "as support" while talking with the officers, and Officer Adcock repeatedly instructed Stroud not to lean on the car. When describing Stroud's behavior at trial, Officer Adcock testified that Stroud's speech "was thick" and "slurred." In addition, Officer Adcock testified that she had interacted with Stroud before when he was outside of his house and that he did not slur his words, sway, or use objects to maintain his balance during that previous encounter.

While talking with Officer Adcock, Stroud admitted to drinking two to three beers after finishing work in Austin and before heading home to Taylor. Based on her observations that morning, Officer Adcock decided to perform an investigation regarding whether Stroud had been driving while intoxicated. Officer Adcock asked Stroud whether he would consent to perform some field-sobriety tests. Around that time, Officer Sanders walked over from the police station to observe the events. All three officers testified that they received specialized training regarding field-sobriety testing and intoxication offenses.

3

After Stroud was asked to submit to testing, he informed Officer Adcock that he had been involved in an accident with an eighteen-wheeler one to two years earlier that resulted in a back injury and caused his head to shake back and forth. In addition, Stroud stated that he felt like he did not need to stay and perform the tests because he was on his driveway. However, Stroud ultimately agreed to perform the horizontal-gaze-nystagmus test. Prior to starting the test, Officer Adcock examined Stroud's eyes to verify that his pupils were of equal size and that his eyes were tracking in the same direction. Stroud had difficulty following Officer Adcock's instructions, and Officer Adcock detected all six clues of intoxication when Stroud performed the test. Officer Sanders testified that Officer Adcock properly performed the nystagmus test. Officer Adcock asked Stroud if he would be willing to perform additional testing, but Stroud explained that he was concerned that he would not be able to perform the test because of his back injury, which Officer Adcock construed as a refusal to perform additional testing. Both Officers Adcock and Look testified that they believed that Stroud was intoxicated based on their observations that morning.

Once Stroud communicated his concerns about performing additional testing, Officer Adcock placed him under arrest for driving while intoxicated, read the statutory warnings regarding the refusal to provide a sample for alcohol testing, and asked Stroud if he would consent to providing either a blood or a breath sample for alcohol testing. Stroud refused that request. Officer Adcock explained at trial that she did not apply for a warrant to obtain a sample of Stroud's blood because the policy of the police department at that time was to obtain a warrant only if an individual had previously been convicted of driving while intoxicated or if it was a no-refusal day. Following Stroud's arrest, Officer Adcock performed a search of Stroud's car and found "a half full bottle of . . . Smirnoff malt liquor" in the front passenger seat that was

4

orange in color as well as "a tumbler with an orange drink in it" in the front cupholder. Officer Sanders testified that she detected an odor of alcohol emanating from the tumbler. Once Stroud was arrested, Officer Look transported him to the police station. Officer Look testified that Stroud slept through most of the trip.

After considering the evidence presented at trial, the jury found Stroud guilty of the offense of driving while intoxicated. Stroud appeals his conviction.

## DISCUSSION

In two issues on appeal, Stroud argues that the district court erred by denying his motion to suppress and that the evidence is insufficient to support his conviction. Because the sufficiency challenge could result "in greater relief than his other issue," we will address that issue first. *See Medina v. State*, 565 S.W.3d 868, 873 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd).

### Sufficiency of the Evidence

For sufficiency reviews, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make "reasonable inferences from basic facts to ultimate facts." *Id.*; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). The factfinder is "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence." *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—

5

Houston [14th Dist.] 2006, pet. ref'd). Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and "defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Id.* at 107 (quoting *Jackson*, 443 U.S. at 320).

As set out above, Stroud was convicted of the offense of driving while intoxicated. Under the Penal Code, an individual commits that offense if he "is intoxicated while operating a motor vehicle in a public place," Tex. Penal Code § 49.04(a), and an individual is intoxicated if he does not have "the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body," *id.* § 49.01(2). Under the Penal Code, the term "'[p]ublic place' means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." *Id.* § 1.07(a)(40). In determinations regarding whether a location falls under that broad definition, "the relevant inquiry is whether the public has access to it." *Shaub v. State*, 99 S.W.3d 253, 256

6

(Tex. App.—Fort Worth 2003, no pet.); *see also Loera v. State*, 14 S.W.3d 464, 467 (Tex. App.—Dallas 2000, no pet.) (explaining that "access" means "freedom of approach or communication; or the means, power, or opportunity of approaching, communicating, or passing to and from" (quoting *Black's Law Dictionary* 13 (6th ed. 1990))). The Court of Criminal Appeals has explained that although the Penal Code does not define the word "operate," for sufficiency reviews, a person "'operates' a vehicle when 'the totality of the circumstances [] demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use.'" *Kirsch v. State*, 357 S.W.3d 645, 650-51 (Tex. Crim. App. 2012) (quoting *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)); *see Priego v. State*, 457 S.W.3d 565, 569 (Tex. App.—Texarkana 2015, pet. ref'd) (stating that term "operating" is interpreted broadly).

On appeal, Stroud presents several sets of arguments challenging the sufficiency of the evidence pertaining to the elements of driving while intoxicated. In his first set of arguments, Stroud contends that there was insufficient evidence that he was intoxicated that morning because he did not perform any field-sobriety tests other than the nystagmus test and because no blood test or breath test was performed in this case. Along those same lines, Stroud argues that the State had the option of obtaining a warrant for a blood sample to determine beyond a reasonable doubt whether he was intoxicated but elected not to pursue that option. In light of the above, Stroud contends that the only evidence presented at trial potentially indicating that he was intoxicated was the testimony regarding his performance on the nystagmus test, regarding the smell of alcohol, and regarding his "inability to stand unassisted after being awakened by the police" and urges that this evidence is insufficient to establish that he was intoxicated beyond a reasonable doubt.

7

In his second set of arguments, Stroud argues that the evidence is insufficient to establish that he operated a motor vehicle on the morning in question. On the contrary, Stroud urges that the evidence established that he was sitting in a legally parked car on his own property. *Cf. Texas Dep't of Pub. Safety v. Allocca*, 301 S.W.3d 364, 368-69 (Tex. App.—Austin 2009, pet. denied) (concluding that evidence did not establish that individual operated her vehicle even though she was found asleep in driver's seat of car with engine on because she was parked in her usual parking space at work, because headlights were not on, because car was in park, and because front seat was reclined for sleeping purposes that would have made it difficult to operate vehicle for purpose of driving).

In his final set of arguments, Stroud contends that the evidence was insufficient to establish that he was in a public place when he operated his car. More specifically, Stroud asserts that the only evidence regarding the nature of the location where his car was stopped originated from him when he informed Officer Adcock that he was on his driveway and, according to Stroud, established that he was on private property. Moreover, after acknowledging that testimony was introduced establishing that Stroud was on a city easement, he argues that any easement across his property would not have rendered the area a public place.[1]

---

[1] When attacking the sufficiency of the evidence supporting his conviction, Stroud contends that certain evidence obtained during the investigation should not be considered in the analysis because the evidence should have been suppressed. However, in reviewing the legal sufficiency of the evidence supporting a conviction, appellate courts consider "all evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted." *Demond v. State*, 452 S.W.3d 435, 445 (Tex. App.—Austin 2014, pet. ref'd). Accordingly, we consider all the evidence to determine whether there is legally sufficient evidence to support the elements of the charged offense. Moreover, we will address the propriety of the trial court's ruling on the motion to suppress, including the reasonableness of the investigation and the propriety of Stroud's subsequent arrest, in the next issue.

8

Although Stroud correctly points out that no alcohol testing was performed in this case, that type of testing is not required to prove intoxication. *See* Tex. Penal Code § 49.04. Regarding whether Stroud was intoxicated, evidence was presented that he was found asleep inside his car with the engine running and with the car in reverse, that the car smelled strongly of alcohol, that he had difficulty following the directions given by the officers, that his speech was slurred, that he admitted to consuming multiple beers earlier, and that there was a partially consumed open bottle of an alcoholic drink as well as a tumbler containing a liquid that smelled like alcohol in the front passenger seat and front cupholder, respectively. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (listing "post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, [and] any admissions by the defendant concerning what, when, and how much he had been drinking" as "evidence that would logically raise an inference that the defendant was intoxicated"); *Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985) (stating that "odor of alcohol on the person" is evidence of intoxication); *Priego*, 457 S.W.3d at 570, 571 (upholding conviction in part because evidence showed that there was partially consumed bottle of alcohol inside car and that defendant smelled like alcohol).

Additionally, the evidence presented at trial demonstrated that the car had been in the same location with its reverse lights on for an extended period of time, that the car was not in a driveway, and that the car was in a city easement area sandwiched between a roadway and a sidewalk with a fence post behind it. Moreover, Officers Adcock and Look both testified that Stroud appeared intoxicated based on their observations of him, and Officer Adcock explained that Stroud's speech and behavior differed from the time she interacted with him before. *See Kiffe*, 361 S.W.3d at 108 (providing that, in general, officer's testimony that individual is intoxicated

9

provides sufficient evidence to establish element of intoxication). Further, evidence was presented showing that no blood or breath samples were tested because Stroud refused to submit to either type of testing. *See Derrick v. State*, No. 05-14-00802-CR, 2015 WL 2195185, at \*3 (Tex. App.—Dallas May 8, 2015, no pet.) (mem. op., not designated for publication) (explaining that refusal to submit to breath test "can support the inference that he believed he would fail the test because he thought he was intoxicated"); *see also Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (stating that evidence of refusal to submit to breath test "is relevant" because "it tends to show a consciousness of guilt"). Additionally, evidence was presented that Stroud displayed all six clues of intoxication when he performed the horizontal-gaze-nystagmus test. *Cf. Plouff v. State*, 192 S.W.3d 213, 219 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (noting that nystagmus test is valid scientific test).

Regarding whether Stroud operated his car while intoxicated, evidence was presented at trial indicating that Stroud was not simply legally parked on his property as he argues. Both Officers Adcock and Look testified that Stroud's car was seen with its reverse lights on and with the engine running, and Stroud admitted that he had been at work before coming home. Moreover, Stroud was the only individual in the car. *See Murray v. State*, 457 S.W.3d 446, 449 (Tex. Crim. App. 2015) (concluding that "because Appellant was the only person found in the area, a factfinder could have also reasonably inferred that Appellant drove his vehicle to the location at which he was found"); *Priego*, 457 S.W.3d at 570 (upholding conviction, in part, because evidence showed that defendant was only person in control of car when she was found unconscious in parking lot and because vehicle was running when defendant was found). Furthermore, as set out above, Stroud was found unconscious in the driver's seat of his car. *See Murphy v. State*, No. 03-13-00281-CR, 2014 WL 4179443, at \*2 (Tex. App.—

10

Austin Aug. 22, 2014, pet. ref'd) (mem. op., not designated for publication) (determining that evidence was legally sufficient to support determination that defendant operated his vehicle while intoxicated where evidence showed that he was discovered unconscious behind wheel of his car with engine running in roadway at 4:00 a.m.); *Dornbusch v. State*, 262 S.W.3d 432, 437-38 (Tex. App.—Fort Worth 2008, no pet.) (finding evidence sufficient where defendant was found asleep in driver's seat of idling vehicle parked in parking lot with headlights and radio on and where there was some evidence that vehicle was not in park); *Pope v. State*, 802 S.W.2d 418, 419, 420 (Tex. App.—Austin 1991, no pet.) (determining that it was reasonable to infer that individual drove while intoxicated to area he was found when he was found sleeping behind steering wheel of vehicle parked in middle of rural road with engine running, with lights on, and with empty beer can inside car).

Regarding whether Stroud operated his car in a public place, evidence was presented during the trial indicating that his car was found beyond his fence line, in front of a fence post dividing his property from the police station, and between the city sidewalk and a public roadway. Further, evidence was presented showing that there were no barriers preventing entry to the area in question, and Officer Adcock described the area as a public place to which members of the public have access. *See Thacker v. State*, No. 03-15-00079-CR, 2015 WL 6841415, at *5 (Tex. App.—Austin Nov. 6, 2015, pet. ref'd) (mem. op., not designated for publication); *see also Shaub*, 99 S.W.3d at 256 (determining that marina was public place because public had access to it). Moreover, Stroud admitted that he had been in Austin for work and that he consumed alcohol before coming home. Accordingly, the jury could have reasonably inferred from all the evidence that Stroud "used a public road or street to reach his destination" while he was intoxicated. *See Loera*, 14 S.W.3d at 468.

11

Given our standard of review in a legal-sufficiency challenge and in light of the evidence presented during trial as well as the reasonable inferences that the jury was free to make from that evidence, we must conclude that the evidence is sufficient to establish that Stroud operated his car in a public place while he was intoxicated. *See* Tex. Penal Code § 49.04. Accordingly, we overrule Stroud's second issue on appeal.

## Motion to Suppress

Prior to trial, Stroud filed a motion to suppress the evidence obtained by the officers during their investigation on the morning in question. During a hearing on the motion to suppress, Officers Look, Adcock, and Sanders all testified, and the recordings from Officer Look's and Officer Adcock's body cameras were admitted into evidence and played for the trial court. The officers testified consistently with their trial testimony regarding the following: their training, their observations of Stroud's car, the nature of the location where his car was stopped, their interactions with him, his behavior, his performance during the horizontal-gaze-nystagmus test, and his arrest. In addition, Officer Look also testified that he approached the car out of concern that someone inside the car might be experiencing a medical emergency. After considering the evidence and the parties' arguments, the trial court denied the motion to suppress. The trial court later issued findings of fact and conclusions of law determining that Officers Look and Adcock were credible and also determining the following:

Findings of Fact

- Both officers had received training and had experience with investigating driving while intoxicated offenses.

- Around 5:30 a.m., Officer Look left the police department . . . to fuel his patrol vehicle when he noticed a vehicle with its reverse lights illuminated.

12

- The vehicle, a white car, was located on what Officer Look believed to be the city easement, since the area was directly adjacent to the roadway.

- At the location, there was a grassy area between the road and a sidewalk that ran perpendicular to the roadway. Behind the sidewalk was a smaller area of grass with a telephone pole and a fence. The vehicle was on the area between the road and the sidewalk.

- Officer Look saw that a driveway was near the vehicle but the vehicle was not on the driveway.

- The vehicle was located at a place where the public has access.

- When Officer Look arrived back at the police department about five minutes later, he saw the same vehicle sitting in the same spot with its reverse lights still on.

- Since the vehicle was in reverse and had been stationary for at least five minutes, Officer Look thought that the occupant might be in distress or be a danger to himself.

- Officer Look also thought it was possible that the occupant could be passed out as a result of intoxication because in his experience he has encountered many people who had fallen asleep while driving with their vehicle in gear because they were intoxicated.

- Officer Look notified Corporal Adcock, one of his superiors, about the vehicle due to his concern that the occupant of the vehicle could possibly be having a medical emergency.

- Corporal Adcock could see Defendant slumped over.

- Officer Look saw that Defendant's chin was on his chest and the officers knocked on the vehicle's window a couple of time[s] and called out in attempt to get Defendant's attention.

- Officer Look saw Defendant lift his head towards the direction of the noise and put his head back on his chest as if he were sleeping.

- Officer Look noticed the strong odor of alcohol coming from the vehicle.

- Officer Look instructed Defendant multiple times to put the vehicle into park.

- When the vehicle's door opened, Corporal Adcock could smell a very strong odor of metabolized alcohol coming from the car.

13

- Corporal Adcock noticed that Defendant used the vehicle to balance when he exited.

- Once Defendant was out of the vehicle, Corporal Adcock could smell the odor of alcohol coming from Defendant.

- Corporal Adcock heard that Defendant's speech was thick and slurred.

- Corporal Adcock had encountered Defendant before and noticed that his mannerisms and speech were different than that previous encounter.

- When talking with Defendant, Corporal Adcock had to ask that he stop using the vehicle for support several times.

- Defendant gave several unresponsive and incoherent statements when talking with the officers.

- Defendant . . . admitted to drinking beers after he had gotten off work the night before.

- Defendant had medical issues that made him not want to perform some of the test[s], but he consented to perform the horizontal gaze nystagmus test . . . .

- Corporal Adcock observed the maximum number of clues for intoxication on the horizontal gaze nystagmus test . . . .

- Corporal Adcock arrested Defendant without a warrant for driving while intoxicated.


Conclusions of Law

- Officer Look's contact with Defendant was reasonable under the community-caretaking exception to the warrant requirement.

- When Officer Look and Corporal Adcock made contact with Defendant, they developed reasonable suspicion to detain him.

- Office[r] Look and Corporal Adcock ha[d] specific, articulable facts that, combined with rational inference from those facts, [led to the conclusion] that Defendant had been, was, or was about to commit the offense of driving while intoxicated.

- Officer Adcock had probable cause to arrest Defendant for driving while intoxicated.

14

In his first issue on appeal, Stroud contends that the trial court erred by denying his motion to suppress. Specifically, Stroud argues that the State violated his right to be "let alone" when he was unreasonably detained by the police on the morning in question. *See Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting) (discussing right to be "let alone" from governmental intrusion). Further, although Stroud acknowledges that the police may without a warrant detain "and assist an individual whom a reasonable person— given the totality of the circumstances—would believe is in need of help," *Laney v. State*, 117 S.W.3d 854, 859 (Tex. Crim. App. 2003) (quoting *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999), he contends that the community-caretaking exception to the warrant requirement did not apply in the circumstances present here because he was not in distress when the police detained him, because he was on his property when the officers detained him, and because he and his stationary car did not present a danger to himself or others, *see id.* at 859 n.3 (listing factors to be considered when determining if detention is justified by community-caretaking exception). Additionally, Stroud argues that even if the officers were genuinely motivated by a concern for his safety, their testimony at the suppression hearing demonstrates that the officers were also motivated by a desire to investigate whether he had been driving while intoxicated. For that reason, Stroud contends that the community-caretaking exception cannot apply to the circumstances here. *Cf. Cady v. Dombrowski*, 413 U.S. 433, 441 (1973) (stating that community-caretaking functions are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute").

After arguing that the community-caretaking exception did not apply, Stroud contends that the officers' detention of him could only have been justified if the officers had a reasonable suspicion that he had committed or was about to commit a crime. Further, Stroud

urges that the only information available to the officers at the time of the detention was their observations that his car had remained stationary in the same place for several minutes with its reverse lights on. Stroud urges that this provided an insufficient basis upon which to form a reasonable belief that he had been or would be engaged in criminal activity and that any information obtained during the subsequent seizure could not have justified the initially illegal detention. *Cf. State v. Griffey*, 241 S.W.3d 700, 704 (Tex. App.—Austin 2007, pet. ref'd) (explaining that "a stop or search unlawful at its inception may not be validated by what it turns up"). For all of these reasons, Stroud contends that the district court should have granted his motion to suppress.

Appellate courts review a trial court's ruling on a motion to suppress for an abuse of discretion. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). In general, appellate courts apply "a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law." *See State v. Cuong Phu Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015); *see also Arguellez*, 409 S.W.3d at 662 (explaining that appellate courts afford "almost complete deference . . . to [a trial court's] determination of historical facts, especially if those are based on an assessment of credibility and demeanor"). "The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex.

16

Crim. App. 2010). "When [a] trial court issues explicit fact findings, we determine whether" those findings are supported by the evidence when the evidence is "viewed in the light most favorable to the" ruling. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008). Moreover, courts "consider only the evidence adduced at the suppression hearing because the ruling was based on that evidence rather than evidence introduced later" unless "the suppression issue has been consensually relitigated by the parties during trial." *Herrera v. State*, 80 S.W.3d 283, 290-91 (Tex. App.—Texarkana 2002, pet. ref'd) (op. on reh'g). In addition, a trial court's ruling on the motion will be upheld if it is correct under any theory of law applicable to the case regardless of whether the trial court based its ruling on that theory, but "a trial court's ruling will not be reversed based on a legal theory that the complaining party did not present to it." *Story*, 445 S.W.3d at 732.

As set out above, Stroud argues that his detention by Officers Look and Adcock was not authorized by the community-caretaking exception or by reasonable suspicion. However, in addition to detentions, there are other types of interactions that may occur between police officers and citizens, including encounters. *See Pennywell v. State*, 127 S.W.3d 149, 152 (Tex. App.—Houston [1st Dist.] 2003, no pet.). "An encounter occurs when a law enforcement officer approaches an individual in public to ask questions." *Id.* The officer does not have to have a justification for initiating an encounter, and the encounter "triggers no constitutional protections." *Id.*; *see also Florida v. Bostik*, 501 U.S. 429, 434 (1991) (explaining that as long as encounter remains consensual in nature, heightened scrutiny required by Fourth Amendment need not be applied). In other words, the officer does not need probable cause or reasonable suspicion to initiate a consensual encounter. *See Hayes v. State*, 132 S.W.3d 147, 151-52 (Tex. App.—Austin 2004, no pet.); *see also State v. Velasquez*, 994 S.W.2d 676, 678 (Tex. Crim. App.

17

1999) (explaining that issues of probable cause and reasonable suspicion do not arise when officer approaches citizen to engage in conversation). "Police officers are as free as any other citizen to knock on someone's door and ask to talk with them, to approach citizens on the street or in their cars and to ask for information or their cooperation." *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008).

In an encounter, a police officer may approach an individual and ask the individual if he is willing to answer some questions. *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality op.); *see also Peterson v. State*, 857 S.W.2d 927, 930 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (stating that police may ask questions of fellow citizens). However, the individual does not have to answer any questions asked, may refuse to listen to the questions, and may leave the situation. *See Royer*, 460 U.S. at 497-98; *see also Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995) (noting that in consensual encounter, citizen is free to ignore officer and walk away). As long as the individual has not been detained, then no constitutional rights have been violated. *Royer*, 460 U.S. at 498; *see also Bostik*, 501 U.S. at 434 (observing that detainment does not occur simply because police approach and question individual); *Peterson*, 857 S.W.2d at 930 (noting that only when questioning becomes detention must officer have reasonable suspicion).

Investigative detentions, on the other hand, must be supported by reasonable suspicion, which "exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has, or soon will be, engaged in criminal activity." *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008). "The reasonableness of a temporary detention must be considered in view of the totality of the circumstances at the inception" of the detention. *Tanner v. State*,

18

228 S.W.3d 852, 855 (Tex. App.—Austin 2007, no pet.).  Moreover, if during a valid detention, "the officer develops reasonable suspicion that the detainee is engaged in criminal activity, prolonged or continued detention is justified." *Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd); *see also State v. Woodard*, 341 S.W.3d 404, 414 (Tex. Crim. App. 2011) (explaining that information known to officer gave him reasonable suspicion to detain and administer field-sobriety tests).

In determining whether a detention has occurred, the critical analysis is "whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Bostik*, 501 U.S. at 437 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)); *see Pennywell*, 127 S.W.3d at 152; *see also Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997) (noting that when determining whether detention has occurred, courts must look at totality of circumstances).  It is only when an officer has conveyed that compliance with his requests is required that an encounter becomes a detention. *Hunte*r, 955 S.W.2d at 106; *see also Johnson*, 912 S.W.2d at 236 (explaining that seizure of citizen does not occur until reasonable person would believe he was not free to leave and either yields to officer's show of authority or has been physically forced to yield).

As set out above, the trial court found that Stroud's car was sitting in an area that was open to the public, and this finding is supported by the testimony presented at the hearing. Moreover, nothing in the testimony or in the two recordings admitted into evidence suggests that when the officers walked over to Stroud's car, they informed Stroud that he was required to answer their questions.  *See Pennywell*, 127 S.W.3d at 152 (noting that there was no evidence suggesting that appellant was not free to refuse to answer officer's questions), or that they

attempted to impede his freedom of movement by, for example, blocking his car in, c*f. Griffey*, 241 S.W.3d at 702, 707 (concluding that officer's detention of defendant by placing his patrol car in front of defendant's vehicle in drive-through lane was not supported by reasonable suspicion). Further, nothing in the testimony or recordings indicates that during the initial interaction Stroud felt compelled to answer the questions posed by the police, attempted to terminate the conversation, or was prohibited from leaving. Similarly, nothing in the record from the suppression hearing suggests that Stroud yielded to a show of authority by the police (e.g., brandishing a weapon or turning on emergency lights). Additionally, the recordings from the body cameras chronicle the officers talking with Stroud in a friendly and respectful manner.

For these reasons, we conclude that the evidence regarding the initial interaction between Stroud and the police officers is consistent with permissible actions that may occur during a consensual encounter between police officers and citizens. *See Hurley v. State*, No. 03-07-00433-CR, 2008 WL 2544780, at \*1-2, \*6 (Tex. App.—Austin June 26, 2008, no pet.) (mem. op., not designated for publication) (determining that interaction between officer and defendant in which officer approached parked vehicle on side of highway and in which officer attempted to communicate with individual asleep inside vehicle was encounter, not detention); *State v. Bryant*, 161 S.W.3d 758, 760, 762 (Tex. App.—Fort Worth 2005, no pet.) (concluding that interaction that occurred after police officer got out of his patrol car and approached defendant's parked vehicle was encounter and not detention and that officer, accordingly, did not need reasonable suspicion to initiate encounter). Therefore, we need not address appellant's arguments regarding whether the initial interaction was permissible under the community-caretaking exception.

After the initial encounter, the interaction turned into a detention when the officers elected to investigate whether Stroud had committed the offense of driving while intoxicated. *See Hurley*, 2008 WL 2544780, at \*6 (noting that encounter between officer and defendant "became a temporary investigative detention" "as the facts developed"); *Bryant*, 161 S.W.3d at 762 (stating that interaction "did not become an investigative detention until after appellee opened his car door"). The trial court determined that the investigative detention was proper because the officers developed reasonable suspicion to detain Stroud based on articulable facts leading the officers to conclude that Stroud had committed the offense of driving while intoxicated. The trial court found that Stroud's car was between the road and a sidewalk, that the car was not on the driveway that was near the car, that the officers discovered Stroud asleep in the driver's seat of his car, that the officers tried multiple times to rouse Stroud, that the engine was on at the time, and that the reverse lights were on. The trial court also found that the officers detected a strong odor of alcohol after Stroud rolled his window down. Those findings are all supported by the evidence presented during the suppression hearing.

In light of our standard of review and the findings made by the trial court, we must conclude that the district court did not abuse its discretion by determining that the officers had reasonable suspicion to conclude that Stroud had committed the offense of driving while intoxicated and had reasonable suspicion to detain him for further investigation. *See Thacker*, 2015 WL 6841415, at \*8 (concluding that officer had reasonable suspicion to believe that defendant may have committed offense of driving while intoxicated and to investigate further, in part, because officer found defendant asleep in his car and because defendant smelled like alcohol and was slurring his speech); *Yocom v. State*, No. 02-03-00181-CR, 2004 WL 742888, at \*1, \*7 (Tex. App.—Fort Worth Apr. 8, 2004, pet. ref'd) (op., not designated for publication)

21

(concluding that officer had reasonable suspicion to detain defendant where officer observed defendant's vehicle in parking lot of closed bank for extended period of time in early morning hours; where defendant was seen in front seat asleep with engine running, appeared dazed, had difficult time following officer's instructions, and had bloodshot eyes; where vehicle "was in drive"; and where officer had difficult time waking defendant up).

In this issue, Stroud also contends that the trial court should have suppressed the evidence regarding his arrest and subsequent events. More specifically, Stroud acknowledges that a police officer may arrest someone without a warrant if the individual commits an offense within view of the officer, *see* Tex. Code Crim. Proc. art. 14.01, but Stroud urges that the evidence presented during the suppression hearing did not establish that the officers viewed him commit the offense of driving while intoxicated or the offense of public intoxication, *see* Tex. Penal Code §§ 49.02, .04. Further, Stroud asserts that his warrantless arrest was not supported by probable cause. *See Alonzo v. State*, 251 S.W.3d 203, 209 (Tex. App.—Austin 2008, pet. ref'd) (explaining that "[a]s a general rule, an officer may not make a warrantless arrest for DWI unless probable cause exists and the DWI is committed in the presence or view of an officer").[2]

"Probable cause requires an evaluation of probabilities, and probabilities 'are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)); *see also Ornelas v. United States*, 517 U.S. 690, 696 (1996) (explaining that probable cause is "fluid concept"). In circumstances like those

---

[2] In its appellee's brief, the State contends that Stroud waived this complaint because he did not assert in his motion to suppress or in the suppression hearing that his arrest was not justified by an exception to the warrant requirement. However, given Stroud's focus on the absence of probable cause in his motion and at the hearing, we will assume without deciding that his argument has been preserved for appellate consideration.

present here, probable cause exists "if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). "The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires a consideration of the totality of the circumstances facing the arresting officer." *Id.* (internal citations omitted); *see also Wiede*, 214 S.W.3d at 25 (providing that piecemeal consideration of evidence is prohibited). This includes "the training, knowledge, and experience of law enforcement officials." *Wiede*, 214 S.W.3d at 25. Moreover, probable cause does not require proof that the individual was actually intoxicated to justify the arrest. *See Illinois v. Gates*, 462 U.S. 213, 235 (1983) (providing that "it is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause'" (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969))); *see also Brinegar*, 338 U.S. at 175 (explaining that probable cause requires evidence that amounts to "more than bare suspicion" but less than necessary for conviction). For driving-while-intoxicated cases, there is no requirement that certain "intoxication indicators" be present to establish probable cause because the factors may be different in each case. *See State v. Long*, No. 03-11-00725-CR, 2012 WL 1959316, at *5 (Tex. App.—Austin May 31, 2012, no pet.) (mem. op., not designated for publication); *see also Woodward v. State*, 668 S.W.2d 337, 345 (Tex. Crim. App. 1984) (on reh'g) (explaining that "[i]t must be kept in mind in reviewing a question of sufficiency of probable cause that such a question is a quintessential example of the necessity for case-by-case determination based upon the facts and circumstances shown").

As set out earlier, the trial court found that Officers Look and Adcock approached Stroud's car after noticing that the car was between a public roadway and a sidewalk in an area that was open to the public, that the car had stayed in the same spot for several minutes, that the officers observed that the car had its reverse lights on, that the car was not in park, that the engine was on, and that Stroud was inside the car slumped over. *Cf. Edwards v. State*, No. 03-02-00373-CR, 2003 WL 22248850, at *1 (Tex. App.—Austin Oct. 2, 2003, no pet.) (mem. op., not designated for publication) (explaining that Penal Code "does not require proof of driving but of operating"). Those findings are supported by the evidence presented during the hearing, and the body-camera recordings documented Stroud sitting in the driver's seat.

Moreover, the trial court found that Stroud appeared to be asleep, had difficulty understanding the officers' instructions, slurred his speech, smelled like alcohol, and had difficulty maintaining his balance without leaning against his car. *Cf. Amador*, 275 S.W.3d at 879 (noting that police officer's observation that defendant "fumbled through his wallet" and "was unusually slow in providing" his driver's license supported existence of probable cause). In addition, the trial court found that Stroud admitted to drinking alcohol after getting off work. *See Dyar v. State*, 125 S.W.3d 460, 468 (Tex. Crim. App. 2003) (providing that suspect's admission that he drank alcohol before driving is relevant factor in probable-cause determination); *Learning v. State*, 227 S.W.3d 245, 249 (Tex. App.—San Antonio 2007, no pet.) (concluding that probable cause existed, in part, where officer noticed smell of alcohol and where defendant admitted that he had been drinking). The trial court also found that Officer Adcock received specialized training in performing field-sobriety tests and that Stroud displayed all six clues of intoxication during the horizontal-gaze-nystagmus test and did not want to perform additional field-sobriety testing. *Cf. Peace v. State*, No. 07-02-00347-CR, 2003 WL 22092707, at *1, *3 (Tex. App.—

24

Amarillo Sept. 9, 2003, no pet.) (op., not designated for publication) (concluding that trial court did not err by determining that probable cause existed to arrest defendant, in part, where defendant smelled like alcohol, admitted to drinking, had slurred speech, had glassy eyes, and displayed all six indicators of intoxication during horizontal-gaze-nystagmus test). The findings summarized above are all supported by the evidence presented during the suppression hearing.

In light of the findings summarized above, we conclude that the district court did not abuse its discretion when it determined that there was probable cause to arrest Stroud for driving while intoxicated on the morning in question after the officers observed Stroud operate his car in a public place. *See* Tex. Penal Code § 49.04; Tex. Code Crim. Proc. art. 14.01.

For all these reasons, we overrule Stroud's first issue on appeal.

## CONCLUSION

Having overruled Stroud's two issues on appeal, we affirm the trial court's judgment of conviction.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:   February 21, 2020

Do Not Publish

25